UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
: 
FOOTBRIDGE LIMITED TRUST and OHP OPPORTUNITY :
LIMITED TRUST, :
: 09 CIV 4050 (PKC)
Plaintiffs, :
:
v. :
:
COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE :
HOME LOANS SERVICING LP, COUNTRYWIDE :
FINANCIAL CORP., COUNTRYWIDE SECURITIES CORP., :
CWABS, INC., CWABS ASSET-BACKED CERTIFICATES :
TRUST 2006-SPS1, CWABS ASSET-BACKED :
CERTIFICATES TRUST 2006-SPS2, ANGELO R. MOZILO, :
DAVID SAMBOL, BANK OF AMERICA CORP., and BAC :
HOME LOANS SERVICING, LP, :
:
Defendants. :
:
:
------------------------------------------------------------------------ X

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
BANK OF AMERICA CORPORATION AND BAC HOME LOANS
SERVICING, LP'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
(212) 326-2000
(212) 326-2061

*Attorneys for Defendants Bank of America
Corporation and BAC Home Loans
Servicing, LP*

September 18, 2009

## TABLE OF CONTENTS

|   | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| SUPPLEMENTAL STATEMENT OF FACTS | 3 |
| ARGUMENT | 4 |
|     I. BofA is Not Liable Under the PSAs | 5 |
|     II. Under Common Law, BofA Is Not Liable as an Asset Purchaser for Countrywide's Alleged Pre-Acquisition Actions | 6 |
|         A. BofA Did Not Expressly or Implicitly Assume Potential Liability for Countrywide's Alleged Pre-Acquisition Securities-Law Violations | 8 |
|         B. The De Facto Merger Doctrine Does Not Apply | 9 |
|         C. BofA Is Not a "Mere Continuation" of Countrywide | 11 |
| CONCLUSION | 12 |

# TABLE OF AUTHORITIES

*CASES*            **Page**

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ............................................................................................... 6

*Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.*,
    No. CV 07-07097 MRP (MANx) (C.D. Cal. Mar. 19, 2009) .......................... 1, 2, 3

*Binder v. Bristol-Myers Squibb, Co.*,
    184 F. Supp. 2d 762 (N.D. Ill. 2001) ................................................................. 6, 10

*Coleman v. Corning Glass Works*,
    619 F. Supp. 950 (W.D.N.Y. 1985) ....................................................................... 10

*Alliance Data Sys. Corp. v. Blackstone Cap. Partners V L.P.*,
    963 A.2d 756 (Del. Ch. 2009) ................................................................................ 9

*Feick v. Fleener*,
    653 F.2d 69 (2d Cir. 1981) ..................................................................................... 6

*Fletcher v. Atex, Inc.*,
    68 F.3d 1451 (2d Cir. 1995) .............................................................................. 7, 11

*Fountain v. Colonial Chevrolet Co.*,
    C.A. Nos. 86C-JA-117, 85C-DE-88,
    1988 WL 40019 (Del. Super. Apr. 13, 1988) .................................................... 8, 11

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995) ................................................................................... 6

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
    8 F.3d 130 (2d Cir. 1993) ....................................................................................... 7

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991) ................................................................................... 1

*LaSalle Nat'l Bank v. Vitro*,
    85 F. Supp. 2d 857 (N.D. Ill. 2000) ...................................................................... 10

*Lewis v. Ward*,
    852 A.2d 896 (Del. 2004) ....................................................................................... 6

*Marenyi v. Packard Press Corp.*,
    No. 90 Civ. 4439 (CSH), 1994 WL 16000129 (S.D.N.Y. June 9, 1994) ................ 8

*Mason v. Network of Wilmington, Inc.*,
    No. Civ. A. 19434-NC, 2005 WL 1653954 (Del. Ch. July 1, 2005) ...................... 9

# TABLE OF AUTHORITIES
## (continued)

*Matsumura v. Benihana Nat'l Corp.*,
   No. 06 Civ. 7609(NRB), 2007 WL 1489758 (S.D.N.Y. May 21, 2007) ................................. 9

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) ......................................................................... 2, 10

*New York v. Nat. Serv. Indus., Inc.*,
   460 F.3d 201 (2d Cir. 2006) ............................................................................................. 7, 11

*Rapoport v. Asia Elecs. Holding Co.*,
   88 F. Supp. 2d 179 (S.D.N.Y. 2000) ..................................................................................... 6

*Ross v. DESA Holdings Corp.*,
   C.A. No. 05C-05-013 MMJ,
   2008 WL 4899226 (Del. Super. Ct. Sept. 30, 2008) ........................................................ 7, 11

*Steinberg v. Ericsson LM Tel. Co.*,
   No. 07 Civ. 9615(RPP), 2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008) .................................. 3

*Totalplan Corp. of Am. v. Colborne*,
   14 F.3d 824 (2d Cir. 1994) ..................................................................................................... 7

*Twentieth Century Fox Film Corp. v. Marvel Enters.*,
   155 F. Supp. 2d 1 (S.D.N.Y. 2001) ....................................................................................... 6

*U.S. Fidelity & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*,
   No. 98 Civ. 3099 (THK), 2005 WL 289575 (S.D.N.Y. Feb. 4, 2005) .................................... 7

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ............................................................................................................ 1, 4

*Xue Lian Lin v. Comprehensive Health Mgmt., Inc.*,
   No. 08 Civ 6519(PKC), 2009 WL 976835 (S.D.N.Y. Apr. 9, 2009) ..................................... 6

Defendants Bank of America Corporation ("BofA") and BAC Home Loans Servicing, LP write separately to address Plaintiffs' attempt to hold BofA vicariously liable as successor for Countrywide Financial Corporation's ("Countrywide") alleged pre-acquisition securities-law violations.[1]

## PRELIMINARY STATEMENT

Red Oak Merger Corporation, a BofA subsidiary, acquired Countrywide nearly two years after Countrywide's alleged securities-law violations. Yet, Footbridge seeks to hold BofA vicariously liable for Countrywide's alleged pre-acquisition misconduct. This attempt violates the maxim "deeply ingrained in our economic and legal systems" that a parent corporation is not vicariously liable for its subsidiary's actions.[2]

Consistent with that black letter rule, another federal court has already dismissed a nearly identical vicarious-liability claim against BofA. Like Footbridge, the plaintiffs in *Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Financial Corp.*[3] argued that BofA was liable as successor for Countrywide's alleged pre-acquisition securities-law violations.[4] Indeed, the SAC relies on the same theory and many of the same allegations as the complaint in *Argent*, including that BofA (i) became Countrywide's successor when it acquired Countrywide;[5] (ii)

---

[1] We refer in this memorandum to Plaintiffs, Footbridge Limited Trust and OHP Opportunity Limited Trust, as "Footbridge" and to the Second Amended Complaint as the "SAC." The SAC alleges that BAC Home Loans Servicing, LP is liable solely as Countrywide Home Loans Servicing, LP's ("CHLS") successor. (SAC ¶ 266.) For the reasons stated in the Defendants' joint memorandum in support of their motion to dismiss, the SAC fails to state a claim against CHLS and thus, also fails to state a successor-liability claim against BAC Home Loans Servicing. Accordingly, the SAC's claims against BAC Home Loans Servicing must be dismissed.

[2] *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).

[3] No. CV 07-07097 MRP (MANx) (C.D. Cal. Mar. 19, 2009).

[4] The *Argent* complaint and the *Argent* plaintiffs' opposition to defendants' motion to dismiss ("Argent Opp.") are attached as Exs. A and B, respectively, to the September 18, 2009 declaration of Jonathan Rosenberg, Esq. ("Rosenberg Dec."). The Court may take judicial notice of such filings. *See, e.g., Kramer v. Time Warner Inc.* 937 F.2d 767, 774 (2d Cir. 1991).

[5] SAC ¶¶ 258, 260; *Argent* Compl. ¶ 24.

expressly or implicitly assumed liability for Countrywide's alleged securities-law violations by announcing that it had purchased Countrywide assets and assumed certain liabilities;[6] and (iii) *de facto* merged with Countrywide by acquiring Countrywide's assets.[7]

Judge Pfaelzer rejected Argent's theory and dismissed its claim with prejudice in deference to the longstanding rule that "a parent does not assume an acquired subsidiary's preacquisition liabilities."[8] In so holding, the court concluded that the Countrywide acquisition did not fall within even "the broadest possible set of exceptions" to this rule because:

- the complaint did not allege that BofA and Countrywide had acted "in bad faith to prejudice Countrywide's creditors";

- BofA did not expressly or implicitly assume liability for Countrywide's alleged pre-acquisition securities-law violations;

- there was no "suggest[ion] that BofA has *de facto* merged with Countrywide"; and

- "BofA is not a 'continuation' of Countrywide."[9]

Footbridge's successor liability claim against BofA suffers from the same defect and should likewise be dismissed. As Footbridge itself alleges, Countrywide "merged into a wholly owned Bank of America subsidiary on July 1, 2008."[10] Under *Argent* and the rule "deeply ingrained" in American jurisprudence, that BofA subsidiary maintains its independent corporate existence and remains solely responsible for Countrywide's alleged pre-acquisition actions. In contrast, BofA bears no responsibility for Countrywide's pre-transaction conduct. And as in

---

[6] See SAC ¶¶ 260, 270; *Argent* Opp. at 4–8; *see also* Letter from Daniel Brockett, Esq. to The Honorable Kevin P. Castel (July 10, 2009) ("Brockett Letter"), at 4 (Rosenberg Dec. Ex. C).

[7] See *Argent* Opp. at 7–9; Brockett Letter at 3–4.

[8] *Argent*, No. CV 07-07097 MRP (MANx), slip op. at 7–9 (Rosenberg Dec. Ex. D).

[9] *Id.* at 7–9 (citing *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000)).

[10] SAC ¶ 259; *see also* Brockett Letter at 2 ("[O]n July 1, 2008, CFC, one of the Countrywide corporate defendants and the parent of the wholly-owned subsidiaries that comprise the other Countrywide defendants, *merged into a wholly-owned subsidiary of Bank of America*.") (emphasis added).

*Argent*, even if BofA had been an asset purchaser, Footbridge's bid to impose liability on BofA would still fail because the SAC does not allege facts sufficient to invoke any of the four recognized exceptions to this bedrock rule.

## SUPPLEMENTAL STATEMENT OF FACTS[11]

Countrywide executed the Agreement and Plan of Merger by and between Countrywide Financial Corporation, Bank of America Corporation, and Red Oak Merger Corporation, dated as of January 11, 2008 (the "Merger Agreement"), in which Countrywide agreed to merge with and into Red Oak, a BofA subsidiary.[12] That merger closed on July 1, 2008.[13] Red Oak was then renamed Countrywide Financial Corporation, as the merger agreement required.[14] Since the merger, Countrywide has replaced its top management[15] and ceased issuing subprime loans and so-called "option-ARM" loans.[16] To this day, Countrywide remains a separate, wholly owned subsidiary of BofA.

Footbridge's claim against BofA is based solely on Countrywide's alleged misstatements in connection with two Countrywide MBS offerings made in June and August 2006—

---

[11] BofA incorporates by reference the facts in the Factual Background section of the Defendants' Joint Memorandum of Law in Support of Their Motion to Dismiss the Second Amended Complaint. BofA's supplemental facts are drawn from: (i) the SAC, (ii) BofA and Countrywide's SEC filing, including the Merger Agreement, which was attached as Appendix A to BofA's May 28, 2008 Form S-4 Registration Statement, and (iii) the Pooling and Servicing Agreements, on which the SAC relies. In deciding a motion to dismiss, courts may consider "documents filed with the SEC," "the complaint and documents attached to it or incorporated in it by reference," as well as "documents 'integral' to the complaint and relied upon even if not attached or incorporated by reference." *Steinberg v. Ericsson LM Tel. Co.*, No. 07 Civ. 9615(RPP), 2008 WL 5170640, at *3 (S.D.N.Y. Dec. 10, 2008).

[12] *See* Bank of America Corp., Registration Statement (Form S-4), App. A (May 28, 2008) (attaching Merger Agreement) ("BofA S-4"); *see also* Bank of America Corp., Current Report (Form 8-K) (Jan 11, 2008). (Rosenberg Dec. Exs. E & F).

[13] Bank of America Corp., Current Report (Form 8-K), Exhibit 99.1 (July 1, 2008) ("BofA Exhibit 99.1"). (Rosenberg Dec. Ex. G); SAC ¶ 259.

[14] Countrywide Fin. Corp., Quarterly Report (Form 10-Q), at 5 (Aug. 11, 2008) ("Countrywide 10-Q") (Rosenberg Dec. Ex. H); BofA S-4, at 59; *Argent*, No. CV 07-07097 MRP (MANx), slip op. at 1 n.1.

[15] SAC ¶¶ 19–20.

[16] *See* BofA Exhibit 99.1; Countrywide 10-Q, at 80.

approximately two years before Countrywide merged into BofA's subsidiary. The SAC alleges that BofA "expressly or impliedly"[17] assumed Countrywide's liabilities when it (i) agreed to restructure certain Countrywide loans and settle unrelated, predatory-lending litigation and (ii) made certain generalized statements about the acquisition.[18] Alternatively, the SAC asserts that BofA *de facto* merged with Countrywide based on BofA's informal references to a "merger" or "combination," BofA's profits from Countrywide, and BofA's changes to Countrywide's brand name.[19] For the same reasons, the SAC also alleges that BofA is a "mere continuation" of Countrywide.[20]

## ARGUMENT

Black-letter corporate law holds "that a parent corporation . . . is not liable for the acts of its subsidiaries."[21] The SAC itself recognizes that Countrywide is a wholly owned BofA subsidiary: "CFC . . . the parent of the wholly-owned subsidiaries that comprise the other Countrywide Defendants . . . *merged into a wholly owned Bank of America subsidiary* [*i.e.*, Red Oak] on July 1, 2008."[22] This admission defeats Footbridge's attempt to hold BofA liable under either (i) the pooling and servicing agreements ("PSAs") that govern the securitizations at issue or (ii) common law.

---

[17] SAC ¶¶ 260, 270.

[18] *Id.* ¶¶ 269–73.

[19] *Id.* ¶¶ 261–68.

[20] *Id.* ¶¶ 260, 266; Brockett Letter at 2–4.

[21] *Bestfoods*, 524 U.S. at 61.

[22] SAC ¶ 259 (emphasis added); *see also* SAC ¶ 262 (quoting BofA's 2008 Annual Report that it "acquired Countrywide through [a] merger with a subsidiary.").

## I. BofA Is Not Liable under the PSAs

Footbridge asserts that BofA is liable for Countrywide's alleged pre-acquisition misconduct "under the terms of the PSAs that govern the Securitizations,"[23] but fails to cite a single PSA provision imposing such liability on BofA. To the contrary, the PSA explicitly provides that only the entity with which Countrywide merges shall succeed to its liabilities: "[a]ny Person into which the Depositor, the Master Servicer or any Seller may be *merged or consolidated . . . shall be the successor* of the Depositor, the Master Servicer or such Seller."[24] As set forth in the Merger Agreement, Countrywide merged into BofA's subsidiary Red Oak, a Delaware limited liability company, with Red Oak continuing as the surviving company.[25] Thus, under the PSA, Red Oak (not BofA, Red Oak's parent) is Countrywide's successor.

The SAC's attempt to blur this distinction by alleging that "Bank of America and Countrywide merged"[26] should be rejected for two reasons. First, it is conclusory—as the Supreme Court recently held, a court evaluating a motion to dismiss need not accept as true legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere

---

[23] *Id.* ¶¶ 274, 258 ("The Bank of America Defendants are liable for Countrywide's wrongdoings . . . because they are Countrywide's successors, as set forth in the agreements governing the Securitizations.").

[24] SPS-1 Pooling and Servicing Agmt. § 6.02; SPS-2 Pooling and Servicing Agmt. § 6.02. (September 18, 2009 Declaration of Victor L. Hou in Support of the Countrywide Defendants' Motion to Dismiss Exs. 6 & 7).

[25] *See* Merger Agmt., Preamble & § 1.1(a).

[26] SAC ¶¶ 260, 258 ("The Bank of America Defendants . . . are Countrywide's successors, as set forth in the agreements governing the Securitizations and at common law.").

conclusory statements . . . ."[27] Second, it is contradicted by documents this Court can consider on this motion—the Merger Agreement and the SAC itself.[28]

## II. Under Common Law, BofA Is Not Liable as an Asset Purchaser for Countrywide's Alleged Pre-Acquisition Actions

Footbridge alleges that exceptions to the general rule against liability for asset purchasers save its claims against BofA.[29] But as the SAC concedes, the BofA–Countrywide transaction was a triangular merger—whereby Countrywide (and all of its assets *and* liabilities) merged into a BofA subsidiary, Red Oak—not an asset purchase.[30] Such "triangular mergers are common and have a myriad of legitimate justifications,"[31] such as affording companies a tax-free acquisition method.[32] Thus, the SAC's allegations regarding asset purchases are inapposite.

And even if the SAC had adequately alleged an asset purchase (which it does not), it still would fail to state a claim against BofA. New York's choice-of-law principles apply because the SAC alleges "jurisdiction . . . based on diversity of citizenship as well as the presence of a

---

[27] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Xue Lian Lin v. Comprehensive Health Mgmt., Inc.*, No. 08 Civ 6519(PKC), 2009 WL 976835, at *1 (S.D.N.Y. Apr. 9, 2009) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal quotation marks omitted) (Castel, J.).

[28] *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (affirming dismissal where complaint's general, conclusory allegations were "contradicted both by more specific allegations in the Complaint and by facts of which we may take judicial notice"); *Feick v. Fleener*, 653 F.2d 69, 75 (2d Cir. 1981) ("Since the documents upon which [plaintiffs] based their claim show on their face absence of any grounds for relief, dismissal was proper."); *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) ("This Court finds that the documents contradict Plaintiffs' allegations and, therefore, this Court must grant Defendants' motion to dismiss.").

[29] SAC ¶¶ 257–74; *see also* Brockett Letter at 2–4.

[30] *See Binder v. Bristol-Myers Squibb, Co.*, 184 F. Supp. 2d 762, 770–71 (N.D. Ill. 2001) (dismissing successor liability claim because alleged transaction was triangular merger with acquirer's subsidiary, not asset purchase).

[31] *Lewis v. Ward*, 852 A.2d 896, 906 (Del. 2004).

[32] *See, e.g.*, PRACTICING LAW INSTITUTE, CORPORATE MERGERS, ACQUISITIONS, AND REORGANIZATIONS, 419–24, 477 (2008).

federal question."[33] Under these choice-of-law principles, the law of BofA and Countrywide's state of incorporation—Delaware[34]—governs the SAC's successor liability claims against BofA.[35] Thus, even though the SAC makes a passing reference to "New York common law,"[36] Delaware law governs BofA's potential liability.

Under Delaware law, "when one company sells or otherwise transfers all of its assets to another company, the buyer generally is not responsible for the seller's liabilities, including claims arising out of the seller's tortious conduct."[37] There are four narrow exceptions to this rule, none of which applies here. Under those exceptions, a buyer may be responsible for the seller's liabilities where: (i) the transaction was a fraudulent attempt to avoid liability; (ii) the purchaser expressly or implicitly assumed the seller's liabilities; (iii) the transaction was a *de facto* merger; or (iv) the purchaser is a mere continuation of the seller.[38] The SAC does not

---

[33] *Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 832 (2d Cir. 1994); SAC ¶¶ 24–25 (alleging federal question and diversity jurisdiction). *See also Twentieth Century Fox Film Corp. v. Marvel Enters.*, 155 F. Supp. 2d 1, 13 (S.D.N.Y. 2001) ("Because jurisdiction in this case is based on diversity of citizenship as well as the presence of a federal question, we follow the choice of law rules of New York, the forum state.").

[34] SAC ¶¶ 12, 21.

[35] *U.S. Fidelity & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98 Civ. 3099 (THK), 2005 WL 289575, at *5 (S.D.N.Y. Feb. 4, 2005) ("The question of successor liability in this proceeding . . . should be governed by the law of . . . the jurisdiction of the relevant entities' incorporation."); *see also Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (applying Delaware law to determine whether to pierce the corporate veil, because "under New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders.") (internal marks omitted); *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("The law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders.").

[36] SAC ¶ 260.

[37] *Ross v. DESA Holdings Corp.*, C.A. No. 05C-05-013 MMJ, 2008 WL 4899226, at *4 (Del. Super. Ct. Sept. 30, 2008); *accord* 15 WILLIAM M. FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 7122 ("The general rule, which is well settled, is that where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor."); *New York v. Nat. Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006) (Under "traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities.").

[38] *See, e.g., DESA Holdings*, 2008 WL 4899226, at *4 (rejecting successor liability for asset purchaser where plaintiff failed to show "(1) the buyer's assumption of liability; (2) defacto merger or consolidation; (3) mere continuation of the predecessor under a different name; or (4) fraud.").

7

allege that BofA acquired Countrywide fraudulently to avoid liability, so this exception cannot apply. And none of the three remaining exceptions saves Footbridge's claims.

### A. BofA Did Not Expressly or Implicitly Assume Potential Liability for Countrywide's Alleged Pre-Acquisition Securities-Law Violations

First, the SAC does not allege that BofA expressly assumed Countrywide's liabilities, nor could it given that Countrywide's liabilities were expressly and exclusively assumed by the BofA subsidiary with which Countrywide merged. Second, the SAC's implicit-assumption theory apparently rests on three categories of alleged BofA acts, none of which supports the requisite inference.

*Loan Restructuring & Settlements.* BofA's voluntary decision to restructure certain Countrywide loans and settle certain predatory-lending lawsuits against Countrywide does not imply that BofA intended to assume Countrywide's potential liability for unrelated, alleged securities-law violations. As one Southern District court has held, "[t]he mere fact of voluntary payment of some of the debts of the predecessor will not ground an inference that the successor assumed all of the former's debts."[39]

*Claim Consideration.* BofA's broad statements—unrelated to any particular Countrywide lawsuit or liability—that the Countrywide acquisition "reflects . . . challenges" arising from "issues within the housing and mortgage industries," and that BofA considered "claims and potential claims" when acquiring Countrywide[40]—do not demonstrate an implicit assumption of liability. As the buyer's parent, BofA naturally considered potential claims against its future subsidiary Countrywide. If a parent's mere consideration of potential liabilities

---

[39] *Marenyi v. Packard Press Corp.*, No. 90 Civ. 4439 (CSH), 1994 WL 16000129, at *7 (S.D.N.Y. June 9, 1994) (citing 15 WILLIAM MEAD FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 7124 (perm. ed., rev. vol. 1990); *see also Fountain v. Colonial Chevrolet Co.*, C.A. Nos. 86C-JA-117, 85C-DE-88, 1988 WL 40019, at *7–8 (Del. Super. Apr. 13, 1988) (holding that payment of certain liabilities did not imply that successor would pay all of its predecessor's liabilities).

[40] SAC ¶¶ 270–72.

confronting its subsidiary were sufficient to impose liability on the parent, then the rule against veil-piercing would be rendered meaningless.[41]

*Alleged Profits*. Allegations regarding BofA's alleged profits and "earnings from the absorption of Countrywide's mortgage business"[42] neither justify disregarding Countrywide's separate corporate form nor reflect any BofA intent to assume potential securities law liability.[43] All parent corporations operate subsidiaries for the purpose of generating profits for the parent. Delaware law respects liability-limiting corporate formalities precisely to permit corporations to pursue profitable activities through their subsidiaries.[44] Thus, Footbridge's theory—that successor liability can be imposed on a parent merely for profiting from its subsidiaries' activities—is contrary to Delaware law.

### B. The De Facto Merger Doctrine Does Not Apply

"Delaware courts have, except in very limited circumstances, rejected the concept of *de facto* merger."[45] Delaware law recognizes a *de facto* merger only where an asset sale (i) amounts

---

[41] *See Mason v. Network of Wilmington, Inc.*, No. Civ. A. 19434-NC, 2005 WL 1653954, at *2–3 (Del. Ch. July 1, 2005) ("Persuading a Delaware court to disregard the corporate entity is a difficult task. . . . Delaware Courts . . . require an element of fraud to pierce the corporate veil.") (internal marks and citations omitted).

[42] SAC ¶ 269

[43] *Matsumura v. Benihana Nat'l Corp.*, No. 06 Civ. 7609(NRB), 2007 WL 1489758, at *8 (S.D.N.Y. May 21, 2007) ("The inclusion by Benihana of the subsidiaries' figures in its overall profits calculation . . . is insufficient to justify ignoring the otherwise separate character of . . . the subsidiary corporations.").

[44] *See Alliance Data Sys. Corp. v. Blackstone Cap. Partners V L.P.*, 963 A.2d 756, 769 (Del. Ch. 2009) ("A huge amount of wealth generation results from the use of distinct entities by corporate parents to conduct business. . . . [allowing] parents [to] cabin the amount of risk they are undertaking by using distinct entities to carry out certain activities. Delaware law respects corporate formalities . . . recognizing that the wealth-generating potential of corporate and other limited liability entities would be stymied if it did otherwise.").

[45] RODMAN WARD, JR., ET AL., FOLK ON DELAWARE GENERAL CORPORATION LAW § 251.4 (4th Ed. 2001).

to a merger between the purchaser and the seller; *and* (ii) was engineered to disadvantage shareholders or creditors.[46]

Setting aside the SAC's failure to allege an asset sale, the SAC does not allege that BofA's Countrywide acquisition was designed to disadvantage stockholders or creditors. Thus, the SAC fails to allege a *de facto* merger under Delaware law. The SAC's selective citations to informal corporate public statements and media reports[47] do not change this result. Courts routinely reject successor liability claims that are premised on informal corporate representations.[48]

For example, in *Fletcher v. Atex, Inc.*,[49] the Second Circuit held that Kodak's "loose" statements about its corporate structure (from promotional pamphlets, informal statements in an annual report, and other documents)—including statements describing a "merger" between Kodak and Atex—did not render Kodak vicariously liable for the actions of its subsidiary, Atex.[50] The court held that notwithstanding Kodak's informal statements, "[i]t is clear from the record that Atex never merged with Kodak."[51]

---

[46] *McKesson HBOC*, 126 F. Supp. 2d at 1276–77 (observing that the *de facto* merger doctrine does not apply "unless the transaction has been structured to disadvantage creditors or shareholders") (applying Delaware law); *Bristol-Myers Squibb*, 184 F. Supp. 2d at 769–70 ("In only a few instances involving sales of assets have Delaware courts applied the doctrine of *de facto* merger and only then 'for the protection of creditors or stockholders who have suffered by reason of failure to comply with the statute governing such sales.'") (quoting R. FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, BALOTTI AND FINKELSTEIN'S DELAWARE LAW OF CORPORATIONS AND BUSINESS ORGANIZATIONS § 9.3 (3d Ed. 1998)).

[47] SAC ¶¶ 261–68.

[48] *Coleman v. Corning Glass Works*, 619 F. Supp. 950, 956 (W.D.N.Y. 1985) ("Although plaintiff has pointed to certain loose language in [Parent's] Annual Reports about its 'merger' with [subsidiary], the defendant has conclusively established that the merger referred to was actually between [subsidiary] and [another subsidiary], one of [the Parent corporation's] wholly owned and separately incorporated subsidiaries."); *see also LaSalle Nat'l Bank v. Vitro*, 85 F. Supp. 2d 857, 865–66 (N.D. Ill. 2000) (finding statements regarding how a company portrays itself insufficient for personal jurisdiction).

[49] 68 F.3d 1451 (2d Cir. 1995) (applying Delaware law).

[50] *Id.* at 1460 (refusing to pierce corporate veil).

[51] *Id.*

The same principle applies here. The SAC relies exclusively on vague statements from BofA's website, press releases, and a magazine article that BofA and Countrywide have "merged" or "combined."[52] None of those informal statements overcomes the documented reality, which the SAC acknowledges, that Countrywide merged with and exists as a BofA subsidiary that is solely responsible for its actions.[53]

Nor does merely changing Countrywide's name[54] amount to a *de facto* merger. Such superficial changes do not determine whether a *de facto* merger has occurred.[55] This is precisely why the Second Circuit in *Atex* rejected such allegations in refusing to hold a parent liable for its subsidiary's actions.[56]

### C. BofA Is Not a "Mere Continuation" of Countrywide

Under Delaware law, the "mere continuation" exception "requires that the new company be the same legal entity as the old company."[57] Here, Countrywide survived its merger with BofA's subsidiary, Red Oak, which was subsequently renamed CFC.[58] CFC continues to exist

---

[52] SAC ¶¶ 261–65, 267

[53] *Id.* ¶¶ 259, 262; *see also* Brockett Letter at 2.

[54] SAC ¶¶ 261, 263, 265–66; *see also* Brockett Letter at 2.

[55] *Nat. Serv. Indus.*, 460 F.3d at 209–10 (identifying four factors that determine *de facto* merger: continuity of ownership, continuity of management, dissolution, and assumption of liabilities).

[56] *Atex*, 68 F.3d at 1460 (refusing to hold parent corporation liable for acts of subsidiary where subsidiary used parent's logo in marketing materials).

[57] *DESA Holdings*, 2008 WL 4899226, at *4; *see also Colonial Chevrolet Co.*, 1988 WL 40019, at *8–9 ("In order to recover from a corporation of one name the obligations of a corporation of another name, upon the theory that the former is a mere continuation of the latter, it must appear that the former is *the same legal entity* as that whose obligation is sought to be charged upon it as one of its own; that is to say, it must be the *same legal person*, having a continued existence under a new name.") (Delaware law) (emphasis added).

[58] Countrywide 10-Q, at 5 ("On January 11, 2008, Countrywide and Bank of America entered into an Agreement and Plan of Merger, pursuant to which Countrywide would merge (the 'Merger') with and into Red Oak Merger Corporation, a wholly-owned merger subsidiary of Bank of America ('Merger Sub'), with Merger Sub continuing as the surviving company. . . On July 1, 2008, Merger Sub was renamed Countrywide Financial Corporation.").

as a separate, wholly owned BofA subsidiary.[59] The SAC acknowledges the companies' separate existence by alleging that (i) Countrywide "merged into a wholly-owned Bank of America subsidiary on July 1, 2008";[60] (ii) "Bank of America confirmed that '[o]n July 1, 2008, we acquired Countrywide through its merger with a subsidiary'";[61] and (iii) "some of the Countrywide Defendants retained their pre-merger corporate names following their merger with Bank of America."[62] Thus, because both Countrywide and Bank of America continue to exist separately, the "mere continuation" exception cannot apply.

## CONCLUSION

The SAC alleges no facts to overcome the black-letter rule that a parent corporation is not liable for the pre-acquisition acts of a subsequently acquired subsidiary. Countrywide merged with Red Oak, a BofA subsidiary, and exists to this day as a separate, wholly-owned BofA subsidiary that is solely responsible for its pre-acquisition conduct. Thus, as the United States District Court for the Central District of California held in dismissing a virtually identical claim against BofA premised upon the exact same acquisition, BofA is not liable for Countrywide's alleged pre-acquisition securities-law violations.

For the foregoing reasons and those in the Countrywide Defendants' memorandum of law in support of their motion to dismiss, the claims against BofA and BAC Home Loans Servicing, LP should be dismissed. Given that Plaintiffs have already amended their complaint twice and have had an ample opportunity to plead their claims, such dismissal should be with prejudice.

---

[59] *See* Bank of America Corp., Current Report (Form 8-K) (Nov. 10, 2008) (observing the distinctions between Countrywide and Bank of America). (Rosenberg Dec. Ex. I).

[60] SAC ¶ 259; *see also* Brockett Letter at 2.

[61] SAC ¶ 262.

[62] *Id.* ¶ 263.

Dated: New York, New York
September 18, 2009

Respectfully submitted,

O'MELVENY & MYERS LLP

By: _____
    Bradley J. Butwin
    Jonathan Rosenberg
    William J. Sushon

7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
E-mail: jrosenberg@omm.com

*Attorneys for Defendants Bank of America Corporation and BAC Home Loans Servicing, LP*