UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOOTBRIDGE LIMITED TRUST AND OHP OPPORTUNITY LIMITED TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE HOME LOANS SERVICING LP, COUNTRYWIDE FINANCIAL CORP., COUNTRYWIDE SECURITIES CORP., CWABS, INC., CWABS ASSET-BACKED CERTIFICATES TRUST 2006-SPS1, CWABS ASSET-BACKED CERTIFICATES TRUST 2006-SPS2, ANGELO R. MOZILO, DAVID SAMBOL, BANK OF AMERICA CORP., and BAC HOME LOANS SERVICING, LP,<br><br>Defendants. | Civil Action No. 09-cv-4050 (PKC)<br><br>ECF CASE<br><br>ORAL ARGUMENT REQUESTED |

# DEFENDANT DAVID SAMBOL'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS

Dated: September 18, 2009

Lori Lynn Phillips, *pro hac vice*
701 Fifth Avenue, Suite 5700
Seattle, WA 98104
(206) 839-4300

Michael D. Torpey, *pro hac vice*
Penelope Graboys
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

Orrick Herrington & Sutcliffe LLP
Attorneys for Defendant David Sambol

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ............................................................................................1

II.  SUMMARY OF ALLEGATIONS AND FACTS ........................................................1

III. ARGUMENT ..................................................................................................2

   A.  Plaintiffs Fail to Allege Particularized Facts That Mr. Sambol Made a Material Misstatement or Omission ..................................................2

   B.  The Complaint Does Not Create a Compelling Inference of Intent ......................4

      1.  Plaintiffs Have Not Alleged Motive and Opportunity ...............................4

      2.  Plaintiffs Have Not Alleged Conscious Misbehavior or Recklessness ...................................................................................7

         a.  Allegations Regarding Mr. Sambol's General Roles and Responsibilities Do Not Demonstrate Scienter .............................7

         b.  The SAC Fails to Adequately Plead That Mr. Sambol Had Access to Information Contradicting His Public Statements ........9

         c.  Plaintiffs' Cursory References Concerning Mr. Sambol's Role in the Securitizations Do Not Support an Inference of Scienter ......................................................................................10

   C.  Plaintiffs Have Not Alleged a Basis for Control Person Liability .......................12

IV. CONCLUSION ..............................................................................................12

i

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*In re 2007 Novastar Fin., Inc., Sec. Litig.*,
  No. 07-0139-CV-W-ODS, 2008 WL 2354367 (W.D. Mo. June 4, 2008),
  *aff'd*, __ F.3d __, 2009 WL 2747281 (8th Cir. Sept. 1, 2009)..........................................11

*Acito v. IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995) ........................................................................................5

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
  Civ. No. 05-232, 2007 WL 81937 (E.D. Pa. Jan. 9, 2007) ................................................3

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)..............................................................................................12

*In re AstraZeneca Sec. Litig.*,
  559 F. Supp. 2d 453 (S.D.N.Y. 2008),
  *aff'd sub nom. State Univs. Ret. Sys. of Ill. v. Astrazeneca PLC*,
  No. 05 CV 2688, 2009 WL 1796534 (2d Cir. June 25, 2009)..........................................4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)..................................................................................1, 12

*In re Axonyx Sec. Litig.*,
  No. 05 Civ. 2307 (TPG), 2009 WL 812244 (S.D.N.Y. Mar. 27, 2009) ..........................11

*In re Bausch & Lomb, Inc. Sec. Litig.*,
  592 F. Supp. 2d 323 (W.D.N.Y. 2008) ....................................................................7, 8

*In re Bayou Hedge Fund Litig.*,
  534 F. Supp. 2d 405 (S.D.N.Y. 2007),
  *aff'd*, *S. Cherry St. LLC v. Hennessee Group LLP*, 573 F.3d 98 (2d Cir. 2009) ...............7

*In re Bristol-Myers Squibb Sec. Litig.*,
  312 F. Supp. 2d 549 (S.D.N.Y. 2004).................................................................3, 6, 11

*In re Citigroup, Inc. Sec. Litig.*,
  330 F. Supp. 2d 367 (S.D.N.Y. 2004)......................................................................4, 8

*In re Cross Media Mktg. Corp. Sec. Litig.*,
  314 F. Supp. 2d 256 (S.D.N.Y. 2004)............................................................................4

*In re Downey Sec. Litig.*,
  No. CV 08-3261-JFW, 2009 WL 2767670 (C.D. Cal Aug. 21, 2009) ........................8, 12

# TABLE OF AUTHORITIES

Page

*ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)......................................................................................5, 9

*In re eSpeed, Inc. Sec. Litig.*,
    457 F. Supp. 2d 266 (S.D.N.Y. 2006)..............................................................................8

*Garber v. Legg Mason, Inc.*,
    537 F. Supp. 2d 597 (S.D.N.Y 2008)..........................................................................9, 10

*In re Gildan Activewear, Inc. Sec. Litig.*,
    No. 08 Civ. 5048 (HB), 2009 WL 1919618 (S.D.N.Y. July 1, 2009) ..........................5, 6

*Goplen v. 51job, Inc.*,
    453 F. Supp. 2d 759 (S.D.N.Y. 2006)..............................................................................9

*In re Hansen Natural Corp. Sec. Litig.*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...........................................................................6

*Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*,
    No. 04 Civ. 3318 (LAP), 2005 WL 736217 (S.D.N.Y. Mar. 30, 2005),
    *aff'd*, 159 F. App'x 317 (2d Cir. 2005)............................................................................9

*In re JP Morgan Chase Sec. Litig.*,
    No. 02 Civ. 1282 (SHS), 2007 WL 950132 (S.D.N.Y. Mar. 29, 2007), *aff'd sub nom.*
    *ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)............................................................................................3

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001).........................................................................................4, 7

*In re Keyspan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (S.D.N.Y. 2003)..............................................................................6

*In re Kidder Peabody Sec. Litig.*,
    10 F. Supp. 2d 398 (S.D.N.Y. 1998)................................................................................3

*Malin v. XL Capital Ltd.*,
    499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) ............1, 6

*Pittleman v. Impac Mortgage Holdings, Inc.*,
    No. SACV 07-0970 AG, 2009 WL 648983 (C.D. Cal. Mar. 9, 2009) ...........................11

*Ressler v. Liz Claiborne, Inc.*,
    75 F. Supp. 2d 43 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 460 (2d Cir. 1999)..........................9

# TABLE OF AUTHORITIES

Page

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)...............................................................................................2

*Scone Invs., L.P. v. Am. Third Mkt. Corp.*,
  No. 97 Civ. 3802 (SAS), 1998 WL 205338 (S.D.N.Y. Apr. 28, 1998)............................2

*In re Sina Corp. Sec. Litig.*,
  No. 05 Civ. 2154 (NRB), 2006 WL 2742048 (S.D.N.Y. Sept. 26, 2006) ....................5, 6

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
  365 F.3d 353 (5th Cir. 2004) .............................................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)........................................................................................................4, 9

*Tripp v. Indymac Fin. Inc.*,
  No. CV07-1635-GW, 2007 WL 4591930 (C.D. Cal. Nov. 29, 2007)............................11

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) ...........................................................................................8

*Yung v. Lee*,
  160 F. App'x 37, 42 (2d Cir. 2005) ..................................................................................4

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) .......................................................................................5, 10

## FEDERAL STATUTES AND REGULATIONS

15 U.S.C. § 78j(b)..................................................................................................................2

15 U.S.C. § 78t(a) ................................................................................................................12

17 C.F.R. 240.10b-5..............................................................................................................2

## MISCELLANEOUS

Fed. R. Civ. P. 8..................................................................................................................12

Fed. R. Civ. P. 9(b) .............................................................................................................12

**I.     INTRODUCTION**

The Second Amended Complaint ("SAC" or "the Complaint") alleges that David Sambol, who was an officer at one of Countrywide Financial Corporation's ("Countrywide") subsidiaries that focused on loan production, engaged in securities fraud in connection with the mortgage-backed securities purchased by Plaintiffs (the "Certificates"). But Plaintiffs do not allege that Mr. Sambol made any statements, much less any actionable misstatements, in connection with the Certificates. Nor do Plaintiffs allege any particularized facts showing that Mr. Sambol had any personal involvement in the offerings. Rather, Plaintiffs acknowledge that Mr. Sambol was not one of the executive officers who signed the offering documents and did not become Countrywide's President and COO until after the offering documents were filed with the SEC. Having chosen to sue Mr. Sambol personally, Plaintiffs must allege particularized facts showing that Mr. Sambol made material misstatements or omissions with respect to the Certificates, and that he did so with fraudulent intent. Plaintiffs have not met this pleading standard. For the reasons set forth below, the Complaint should be dismissed.[1]

**II.    SUMMARY OF ALLEGATIONS AND FACTS**

Plaintiffs' claims against Mr. Sambol arise solely from their purchases of mortgage-backed securities in two offerings that were securitized in June and August 2006—months *before* Mr. Sambol became Countrywide's President and COO in September 2006. SAC ¶¶ 63, 20. By the time Mr. Sambol became President and COO in September 2006 and became a member of Countrywide's Board of Directors a year later, Countrywide had over 50,000 employees. *See id.* ¶¶ 20, 28; *see also* Ex. A.[2] Plaintiffs do not allege that Mr. Sambol was involved in any securitizations, much less the securitizations related to the Certificates Plaintiffs purchased.

---

[1] Mr. Sambol joins in Defendants' Joint Memorandum of Law in Support of Their Motion to Dismiss the Second Amended Complaint ("Defendants' Joint Memorandum") and, to the extent applicable, the other Defendants' supplemental briefs.

[2] Unless otherwise noted, all exhibits are attached to the Declaration of Lori Lynn Phillips in Support of Defendants' Joint Motion to Dismiss, dated September 17, 2009 ("Phillips Decl."). The Court may properly consider those documents on motion to dismiss. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 131-34 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009).

Tellingly, Plaintiffs do not make a single allegation that Mr. Sambol made any misstatement in connection with the Securitizations, because they cannot.[3] Each of the alleged misrepresentations concerning the Certificates pertains to specific disclosures over which Mr. Sambol had no direct oversight or involvement, and Plaintiffs have not specifically alleged otherwise. Instead, Plaintiffs almost haphazardly throw in few statements by Mr. Sambol completely unrelated to the Certificates. SAC ¶¶ 35, 172. The Complaint does not allege that these statements were false or that Mr. Sambol subjectively believed they were false when he made them, nor do Plaintiffs allege the statements influenced their purchases at issue here.

## III. ARGUMENT[4]

### A. Plaintiffs Fail to Allege Particularized Facts That Mr. Sambol Made a Material Misstatement or Omission.

Plaintiffs do not allege that Mr. Sambol made a material misstatement or omission regarding the Certificates. Rather, the Complaint cites three statements by Mr. Sambol (SAC ¶¶ 35, 172), none of which is alleged to be part of the purported fraudulent misrepresentations and omissions regarding the Certificates (*id.* ¶¶ 65-135). Plaintiffs also do not explain how these statements, generally made months prior to the securitizations, were false, misleading, or had anything to do with their purchases. *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) ("[P]laintiffs must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so."). Worse still, Plaintiffs mischaracterize the statements and take them out of context.

Plaintiffs first allege that at a May 24, 2005 investor presentation, Mr. Sambol stated that "Countrywide required 'higher credit scores or lower loan to value ratios' as a condition to approving riskier adjustable-rate mortgages, in order to counter the increased risk." SAC ¶ 172. Plaintiffs claim this statement was false because Countrywide allegedly had abandoned its

---

[3] Plaintiffs acknowledge that other Countrywide executives signed the registration statements for the offerings at issue. SAC ¶ 141.

[4] The arguments in this section also apply to Plaintiffs' common-law fraud claim. *Scone Invs., L.P. v. Am. Third Mkt. Corp.*, No. 97 Civ. 3802 (SAS), 1998 WL 205338, at *10 (S.D.N.Y. Apr. 28, 1998) (elements of common law fraud are essentially same as those necessary to establish claim under Section 10(b) and Rule 10b-5).

2

underwriting standards. *Id.* Yet Plaintiffs do not explain how a statement regarding adjustable rate mortgages relates to the "fixed-rate loans" underlying the Certificates at issue in this case. *Id.* ¶ 2. Contrary to Plaintiffs' selective quote, Mr. Sambol did not misrepresent Countrywide's origination practices, but rather stated that Countrywide mitigated or addressed in part the higher credit risk through a number of means, such as "maybe higher credit scores or lower loan to value ratios," and "also importantly," "pric[ing] for [the increased risk] in a very granular way." Ex. B at 13-14. *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 558 (S.D.N.Y. 2004) (disregarding plaintiffs' quotations that distort defendant's statements).

Second, Plaintiffs allege that at an investor conference in September 2006, Mr. Sambol observed that Countrywide had "what we believe is best-of-class governance" and a culture "characterized by a very high degree of ethics and integrity in everything that we do." SAC ¶ 35 (emphasis omitted).[5] Plaintiffs do not allege that this generalized statement about Countrywide was false in any way, much less provide the requisite specificity that this statement was false or misleading when made. Even if Plaintiffs had alleged that Mr. Sambol's statements were false, the SAC still fails to state a claim against him because the statements are inactionable puffery. Mr. Sambol's generalized statements "regarding integrity, fiscal discipline and risk management," are "precisely the type of puffery that this and other circuits have consistently held to be inactionable." *In re JP Morgan Chase Sec. Litig.*, No. 02 Civ. 1282 (SHS), 2007 WL 950132, at *12 (S.D.N.Y. Mar. 29, 2007) (internal quotation marks omitted), *aff'd sub nom. ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009).[6]

---

[5] The alleged statement was found in a March 2006 equity investor forum transcript, although the Complaint dates the statement as being made in September 2006. *See* Ex. C at 19-20; SAC ¶ 35. The date of the statement in relation to Plaintiffs' purchases may be considered by the Court on this Motion. *Bristol-Myers*, 312 F. Supp. 2d at 555 ("The court need not accept as true an allegation that is contradicted by documents on which the complaint relies."). In any event, Plaintiffs do not show how this statement was false or in any way connected to Plaintiffs' purchases.

[6] *See also In re Kidder Peabody Sec. Litig.*, 10 F. Supp. 2d 398, 413 n.15 (S.D.N.Y. 1998) (statements about culture and integrity are puffery and not actionable); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, Civ. No. 05-232, 2007 WL 81937, at *8 (E.D. Pa. Jan. 9, 2007) ("The phrases 'a strong credit culture' and 'quality performance loans' are the type of vague statements that fall squarely under the definition of puffery.").

3

Third, Plaintiffs allege that at a September 2006 investor forum, Mr. Sambol stated that Countrywide had been "on the sidelines" of the subprime market. SAC ¶ 172. Contrary to Plaintiffs' artfully excerpted quote, Mr. Sambol stated that subprime represented less than 10% of Countrywide's total production, as well as the following: "[W]e remain committed to having a subprime presence. But, there are no particular plans to accelerate growth. And, I think that would characterize our current posture as remaining on the sidelines . . . ." Ex. D at 19. Plaintiffs do not allege that Mr. Sambol's assessment that subprime comprised less than 10% of Countrywide's loan production was false. Nor do Plaintiffs show how this statement contradicts the ample disclosures made in the offerings that the fixed-rate seconds were credit-blemished loans. *See* Declaration of Victor L. Hou, Exs. 4 at i & 5 at i. Further, whether Countrywide could be characterized as being "on the sidelines" of the subprime market is irrelevant, as Plaintiffs concede that the loans underlying the Certificates—i.e. Countrywide's only exposure relevant in this case—*were* subprime. SAC ¶ 148. In short, Plaintiffs fail to show that this statement was false when made or how it is even relevant to the case.[7]

## B. The Complaint Does Not Create a Compelling Inference of Intent.

### 1. Plaintiffs Have Not Alleged Motive and Opportunity.

To adequately plead motive to commit fraud, Plaintiffs "must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). The lack of a motive weighs against an inference of scienter. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325-26 (2007).

---

[7] Plaintiffs' attempt to impose liability on Mr. Sambol for alleged statements by "Countrywide"—i.e., those statements that Mr. Sambol is not alleged to have made personally—does not meet the particularity requirements of the Reform Act. The Complaint's use of "group pleading" is fundamentally at odds with the particularized pleading requirements of the Reform Act and did not survive its enactment. *See, e.g.*, *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 364-65 (5th Cir. 2004); *In re Cross Media Mktg. Corp. Sec. Litig.*, 314 F. Supp. 2d 256, 262 (S.D.N.Y. 2004). The Second Circuit has not yet ruled on the continued viability of the group pleading doctrine. *See Yung v. Lee*, 160 F. App'x 37, 42 (2d Cir. 2005). Even if the doctrine survives, it does not override Plaintiffs' obligations to plead an individual defendant's knowledge of information that allegedly renders his disclosures false or misleading and that he acted with scienter. *See In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004); *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 472 (S.D.N.Y. 2008), *aff'd sub nom. State Univs. Ret. Sys. of Ill. v. Astrazeneca PLC*, No. 05 CV 2688, 2009 WL 1796534 (2d Cir. June 25, 2009).

Plaintiffs allege that Mr. Sambol had a motive to commit fraud because he supposedly benefited from the alleged fraud in the form of increased revenue for the corporation, increased value of Countrywide stock, and increased compensation. SAC ¶ 183. Courts routinely reject allegations relating to these generic incentives as circumstantial evidence of scienter. *See, e.g.*, *ECA*, 553 F.3d at 198-99 ("Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry."); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) ("[I]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated." (alteration in original; internal quotation marks omitted)).

Plaintiffs also rely on allegations of stock sales to infer scienter, stating that Mr. Sambol "aggressively liquidated [his] stock holdings at an enormous personal profit." SAC ¶ 193. To support that theory, Plaintiffs must allege that the sales were "unusual." *Acito*, 47 F.3d at 54. But the Complaint provides only the number of shares Mr. Sambol sold and his gross proceeds (i.e., ignoring the exercise price) from those sales (SAC ¶¶ 195-96). It fails to provide any context or prior trading history that would permit the Court to determine whether or not Mr. Sambol's stock sales were "unusual." *Acito*, 47 F.3d at 54. This failure alone is sufficient to defeat Plaintiffs' attempt to plead scienter. *See In re Gildan Activewear, Inc. Sec. Litig.*, No. 08 Civ. 5048 (HB), 2009 WL 1919618, at *6 (S.D.N.Y. July 1, 2009); *In re Sina Corp. Sec. Litig.*, No. 05 Civ. 2154 (NRB), 2006 WL 2742048, at *11-12 (S.D.N.Y. Sept. 26, 2006); *accord Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005-06 (9th Cir. 2009).

Mr. Sambol's stock sales were far from "unusual." The sales were made at regular intervals pursuant to non-discretionary 10b5-1 plans. Phillips Decl. ¶ 8 & Ex. E. *Gildan*, 2009 WL 1919618, at *7 (stock sales made pursuant to a non-discretionary Rule 10b5-1 trading plan undermine any allegation that the timing or amounts of the trades were unusual or suspicious). During the nine months from October 2006 through June 2007 (the period of stock sales selected by Plaintiffs), Mr. Sambol sold 372,875 shares, but he sold a similar amount of shares—

5

397,000—during the preceding nine-month period (all pursuant to his 10b5-1 plans), undercutting any inference that his sales were unusual or suspicious. Phillips Decl. ¶¶ 9-10. *Malin*, 499 F. Supp. 2d at 151-52 (holding that sales were not "unusual" where defendants "sold significantly more stock in the twenty-two month period prior to the twenty-three-month Class Period than they did during it"); *see also Sina*, 2006 WL 2742048, at *11-12 (no scienter where defendants' trading activity during class period "was not at all unusual when compared with their prior activity").[8] Furthermore, the sales alleged against Mr. Sambol represented 13.1% of his Countrywide holdings at the end of the alleged trading period.[9] Phillips Decl. ¶ 14. *See Gildan*, 2009 WL 1919618, at * 6 ("total sales amounting to a relatively low percentage of an insider's percentage of stock holdings militate against an inference of scienter"; sale of 22.5% of holdings not suspicious); *Malin*, 499 F. Supp. 2d at 153 (same for sales up to 30% of holdings). Mr. Sambol's net holdings actually increased during this nine-month period, Phillips Decl. ¶¶ 9, 15, "a fact wholly inconsistent with fraudulent intent." *Bristol-Myers*, 312 F. Supp. 2d at 561.

Plaintiffs' attempt to plead that the timing of Mr. Sambol's sales were suspicious due to their proximity to stock repurchases by the Company similarly misses the mark. As an initial matter, the dates of the allegedly suspicious sales do not match with the dates the repurchases are alleged to have occurred. SAC ¶¶ 195-96. Second, Plaintiffs have not attempted to demonstrate how these dates, or the repurchase program, are at all linked to the alleged misstatements concerning the Certificates. *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 385 (S.D.N.Y. 2003) (scienter not adequately alleged where "plaintiffs [did] not allege enough of a connection between the . . . insider sales and any public statement to give rise to a strong inference of fraud"). It is apparent that Plaintiffs have arbitrarily (or craftily) selected these dates without

---

[8] Plaintiffs' allegations undermine any inference of scienter against Mr. Sambol. Plaintiffs allege that Countrywide's share price rose to an all-time high of $45.03 per share on February 2, 2007, and that Mr. Sambol was "aggressively liquidating [his] stock holdings because [he] knew that the Company was headed for collapse," among other similar allegations. SAC ¶¶ 194; 205. But curiously lacking from the Complaint is any allegation regarding Mr. Sambol's stock sales, if any, during this all-time high. Mr. Sambol's Forms 4 shows that he traded at regular intervals pursuant to his March 2006 10b5-1 plan. *See* Ex. E.

[9] *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1160 (C.D. Cal. 2007) (no scienter where insider sells only portion of holdings and "end[s] up reaping the same large losses" as plaintiff).

relation to any alleged misstatement or omission. Such allegations fail to support an inference of scienter.

### 2. Plaintiffs Have Not Alleged Conscious Misbehavior or Recklessness.

Because Plaintiffs have failed to identify any apparent motive for Mr. Sambol to commit the alleged fraud, "the strength of the circumstantial allegations [of conscious misbehavior] must be correspondingly greater." *Kalnit*, 264 F.3d at 142 (internal quotation marks omitted). Plaintiffs "must allege facts approaching a knowledgeable participation in the fraud or a deliberate and conscious disregard of facts." *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 415 (S.D.N.Y. 2007) (internal quotation marks omitted), *aff'd*, *S. Cherry St. LLC v. Hennessee Group LLP*, 573 F.3d 98, 109 (2d Cir. 2009) ("By reckless disregard for the truth, we mean conscious recklessness—i.e., a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*." (internal quotation marks omitted)). The Complaint fails to allege particularized facts that create a cogent and compelling inference that Mr. Sambol intended to deceive Plaintiffs or had a state of mind that was so reckless as to approximate actual intent.

#### a. Allegations Regarding Mr. Sambol's General Roles and Responsibilities Do Not Demonstrate Scienter.

Plaintiffs admit that the offering documents were executed by other executive officers, who were generally Mr. Sambol's superiors before his advancement to the title of President and COO. SAC ¶¶ 64, 141. In the 274-paragraph Complaint, Plaintiffs make only limited, boilerplate allegations regarding Mr. Sambol's role in the securitizations. They allege that Mr. Sambol (1) in his capacity as a senior executive, who oversaw the personnel who created and signed the offering documents; (2) reviewed or could have reviewed these and other documents; (3) and therefore knew or should have known of the purported misrepresentations. *Id.* ¶ 141. The securities laws require more.

Plaintiffs attempt to allege scienter through recitation of Mr. Sambol's executive position and committee membership. *See, e.g.*, *id.* ¶¶ 121, 139-40, 185. Such allegations are insufficient to plead scienter. *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 340 (W.D.N.Y.

7

2008) ("It is well established that boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter." (internal quotation marks omitted)). Mr. Sambol did not become the President and COO of Countrywide until after the two securitizations at issue were complete. SAC ¶ 20. Nor did he become a director until the following year. These allegations illustrate that Mr. Sambol was not personally involved in the securitizations and did not have a supervisory role over those who were.

Plaintiffs make various vague allegations describing Mr. Sambol's roles, his "hands-on" management, the alleged "culture" at Countrywide around underwriting, and plans to grow the Company. SAC ¶¶ 184-90. These conclusory allegations fail to meet the heightened pleading standards of the Reform Act. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087-88 (9th Cir. 2002) (no scienter inferred based on "defendants' attendance at meetings and their 'hands-on' managerial style"); *In re Downey Sec. Litig.*, No. CV 08-3261-JFW, 2009 WL 2767670, at *12 (C.D. Cal Aug. 21, 2009) ("Plaintiff must do more than allege that . . . key officers had the requisite knowledge by virtue of their hands on positions; a ruling to the contrary would eliminate the necessity for specially pleading scienter . . . ." (internal quotation marks omitted; first alteration in original)).[10]

At no point do Plaintiffs allege that Mr. Sambol had any personal involvement or role in these securitizations and related disclosures, much less any particularized facts demonstrating that Mr. Sambol knew or was reckless in not knowing about the purported misrepresentations. *Citigroup*, 330 F. Supp. 2d at 381 (plaintiff must allege that defendant "*personally* knew of, or participated in, the fraud" (internal quotation marks omitted)).[11]

---

[10] Allegations based on involvement in a company's core operations similarly fail. *See In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 293-94 & n.209 (S.D.N.Y. 2006) (casting doubt on post-PSLRA viability of pleading scienter by means of "core operations" and dismissing securities fraud claim for failure to plead scienter where plaintiffs failed to adequately plead that the relevant operations were "so vital to eSpeed that its top officers must have known [the truth]").

[11] Given the number of employees in various departments who were involved in different aspects of the Company's business operations, *see* SAC ¶ 28, it is illogical to infer that Mr. Sambol had personal involvement in or

8

### b. The SAC Fails to Adequately Plead That Mr. Sambol Had Access to Information Contradicting His Public Statements.

Scienter may be pled by specific allegations that each defendant "knew facts or had access to information suggesting that their public statements were not accurate." *ECA*, 553 F.3d at 199 (internal quotation marks omitted). But Plaintiffs must "specify the internal reports, who prepared them and when, how firm the numbers were or which company officers reviewed them." *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 615 (S.D.N.Y 2008); *Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 768 (S.D.N.Y. 2006) ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." (internal quotation marks omitted)). The Complaint contains generic allegations that the Second Circuit has routinely rejected.

*Access to Sophisticated Electronic Databases and Unspecified Information.* Plaintiffs allege that Mr. Sambol "knew facts and had access to information" and "sophisticated electronic databases." SAC ¶¶ 183, 191. Such allegations of access to unspecified information fail to meet the required level of specificity. *Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*, No. 04 Civ. 3318 (LAP), 2005 WL 736217, at *4 (S.D.N.Y. Mar. 30, 2005) ("Vague and conclusory allegations that a defendant allegedly had access to non-public information, including matters discussed at internal meetings or contained in unspecified internal reports and documents, do not suffice."), *aff'd*, 159 F. App'x 317 (2d Cir. 2005). Equally fatal to Plaintiffs' allegations is the fact that Plaintiffs do not allege that these electronic databases and unspecified information mention the SPS1 and SPS2 offerings at all, or even the specific mortgage loans underlying them. *Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43, 52 (E.D.N.Y. 1998) ("[T]o withstand a motion to dismiss, a plaintiff must detail specific contemporaneous data or information known to the defendant that was inconsistent with the representation in question."), *aff'd*, 189 F.3d 460 (2d Cir. 1999).

---

knew the specific data concerning these Certificates. *Tellabs*, 551 U.S. at 314 (inference must be "cogent and *at least as compelling* as any opposing inference of nonfraudulent intent" (emphasis added)).

*Exception Reports*.  Plaintiffs' allegations concerning Exception Reports are similarly deficient.  *See* SAC ¶ 191.  Plaintiffs fail to allege with particularity who at Countrywide provided these documents, when such documents were provided, any particularized facts as to the contents of these reports, or how they serve as evidence that Mr. Sambol acted with deliberate recklessness.  The purported existence of these unspecified reports, without more, does not support an inference of scienter.  *See Garber*, 537 F. Supp. 2d at 615 ("unsupported general claim of the existence of confidential company sales reports that revealed [unfavorable figures] is insufficient to survive a motion to dismiss" (internal quotation marks omitted; alteration in original)).

    c. **Plaintiffs' Cursory References Concerning Mr. Sambol's Role in the Securitizations Do Not Support an Inference of Scienter.**

Plaintiffs contend that Countrywide engaged in five categories of misrepresentation in the offering documents.  As shown in the Defendants' Joint Memorandum, these allegations are insufficiently pled.  As to Mr. Sambol, Plaintiffs' allegations fall far short of establishing a strong inference of scienter.

First, in the 71 paragraphs of alleged misrepresentations regarding the securitizations, Plaintiffs do not allege that Mr. Sambol made any of the misleading statements.  Second, Plaintiffs fail to explain how the Complaint's tenuous references to Mr. Sambol have anything to do with the securitizations involved.  For instance, Plaintiffs make passing reference that Mr. Sambol helped "create and authorize a corporate culture that emphasized market share and profit" and "authorized the establishment of a 'Structured Loan Desk.'"  SAC ¶¶ 98, 113.  But conclusory allegations about Countrywide's "culture" say nothing about the only two offerings at issue here.  Plaintiffs also allege no facts tying the Structured Loan Desk to the SPS1 or SPS2 offerings.  *See Zucco*, 552 F.3d at 1000-01 (failure to plead scienter where there was no indication that the subject matter of the misrepresentations "would be operationally visible to executives not intimately connected with" that portion of the business).  Nor do Plaintiffs suggest that the presence of the Structured Loan Desk somehow rendered any statement in the Offering

10

Documents false or misleading. In short, these allegations do not contain any facts, much less particularized facts, sufficient to support an inference of conscious misbehavior or recklessness. *See Bristol-Myers*, 312 F. Supp. 2d at 566 (allegation that sales were made pursuant to incentives to meet management goals was "insufficient basis on which to infer conscious misbehavior or recklessness"); *In re 2007 Novastar Fin., Inc., Sec. Litig.*, No. 07-0139-CV-W-ODS, 2008 WL 2354367, at *2-3 (W.D. Mo. June 4, 2008) (holding that company may have changed or even weakened its internal controls or underwriting standards, but that does not mean that those controls or standards were not "strong" or "effective" as described in public statements), *aff'd*, __ F.3d __, 2009 WL 2747281 (8th Cir. Sept. 1, 2009).[12]

Plaintiffs' liberal use of internal e-mails cited in the SEC or AG complaints does not support an inference of scienter either, because the emails do not address the alleged misrepresentations in this case. *See* Defendants' Joint Memorandum.[13] Additionally, Plaintiffs do not allege Mr. Sambol authored any of those e-mails, or that any of the e-mails contradicted Mr. Sambol's statements. At best, these e-mails showed a healthy discussion amongst the executives within Countrywide regarding the different loan programs. Differences of opinion are fully expected to occur within companies and do not constitute securities fraud. *In re Axonyx Sec. Litig.*, No. 05 Civ. 2307 (TPG), 2009 WL 812244, at *4 (S.D.N.Y. Mar. 27, 2009)

---

[12] *See also Pittleman v. Impac Mortgage Holdings, Inc.*, No. SACV 07-0970 AG, 2009 WL 648983, at *3-4 (C.D. Cal. Mar. 9, 2009) (rejecting allegations that lender's CEO and COO violated standard due diligence procedures and faced significant pressure to approve and purchase loans that did not meet underwriting guidelines); *Tripp v. Indymac Fin. Inc.*, No. CV07-1635-GW, 2007 WL 4591930, at *3 (C.D. Cal. Nov. 29, 2007) (dismissing allegations that lender "was plagued by profoundly flawed underwriting and hedging operations" (internal quotation marks omitted)).

[13] As explained in Defendants' Joint Memorandum, the e-mails are unrelated to the alleged misstatements in this case. *See, e.g.*, SAC ¶ 77 (June 1, 2006 e-mail regarding pay option ARMs); ¶¶ 121 & 150 (e-mails regarding loan files delivered to HSBC, which purchased whole loans); *see also* Defs.' Joint Mem. at 14; SAC ¶ 156 (fall in share of conforming loans and rise in share of subprime loans); ¶ 164 (months after Plaintiffs' final purchase of Certificates, Sambol notified of delinquency and underwriting changes to subprime loans). None of those emails relates to the fixed rate loans at issue here. *Id.* ¶ 2.

(difference of opinion not a basis for a finding of scienter). Because Plaintiffs have not adequately alleged scienter, the Complaint must be dismissed.[14]

### C. Plaintiffs Have Not Alleged a Basis for Control Person Liability.

Plaintiffs' Section 20(a) claim must be dismissed both because the Complaint fails to state a primary fraud claim and because Plaintiffs have not alleged specific facts showing that Mr. Sambol was a "culpable participant" in any alleged fraud. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007); *see also Downey*, 2009 WL 2767670, at *15 ("boilerplate allegations" that defendants were liable as control persons due to "their position in Downey, their participation in setting underwriting guidelines and loan loss reserves, and their ownership of Downey stock" insufficient to state claim under Section 20(a)).

## IV. CONCLUSION

Plaintiffs' allegations against Mr. Sambol and the other Defendants fail to clear the heightened pleading standards of the Reform Act and Rule 9(b) and do not state any cognizable claim. The Court should therefore dismiss the SAC in its entirety.

Dated: September 18, 2009

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: s/ Lori Lynn Phillips
    Lori Lynn Phillips, *pro hac vice*

701 Fifth Avenue, Suite 5700
Seattle, WA 98104
(206) 839-4300
Attorneys for Defendant David Sambol

OHS West:260717533.10

---

[14] The Complaint also fails to meet Rule 8. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).

12