UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOOTBRIDGE LIMITED TRUST AND OHP OPPORTUNITY LIMITED TRUST,<br><br>    Plaintiffs,<br><br>    -against-<br><br>COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE HOME LOANS SERVICING LP, COUNTRYWIDE FINANCIAL CORP., COUNTRYWIDE SECURITIES CORP., CWABS, INC., CWABS ASSET-BACKED CERTIFICATES TRUST 2006-SPS1, CWABS ASSET-BACKED CERTIFICATES TRUST 2006-SPS2, ANGELO R. MOZILO, DAVID SAMBOL, BANK OF AMERICA CORP. AND BAC HOME LOANS SERVICING, LP,<br><br>    Defendants. | 09 CIV 4050 (PKC)<br>ECF CASE |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND AND TO FILE THE THIRD AMENDED COMPLAINT

                QUINN EMANUEL URQUHART OLIVER &
                  HEDGES, LLP
                Daniel L. Brockett
                David D. Burnett
                51 Madison Avenue, 22nd Floor
                New York, New York  10010-1601
                Telephone:  (212) 849-7000
                Fax:  (212) 849-7100

                Marshall M. Searcy III (admitted pro hac vice)
                Scott R. Commerson (admitted pro hac vice)
                865 S. Figueroa St. 10th Floor
                Los Angeles, California 90017
                Telephone:  (213) 443-3000
                Fax:  (213) 443-3100

                *Attorneys for Plaintiffs Footbridge Limited Trust*
                *and OHP Opportunity Limited Trust*

**PRELIMINARY STATEMENT**

In this securities fraud action, Plaintiffs seek leave pursuant to the Court's order of October 20, 2009 to amend their complaint to add claims against certain Defendants for violations of Sections 11, 12(a)(2), and 15 of the Securities Act (the "1933 Act" claims).[1] Plaintiffs also seek leave to add certain additional factual allegations to the complaint that primarily support the proposed new 1933 Act claims, but also support the existing claims under Rule 10b-5 and common-law fraud. Plaintiffs' motion should be granted—this litigation is still in its earliest stages and Defendants will suffer no prejudice as a result of Plaintiffs' amendment.

It is indisputable that Plaintiffs have the right to assert their 1933 Act claims at this time. These are not new claims. They have been brought on behalf of Plaintiffs (and other investors in Countrywide securities) in a class action that has been pending for nearly two years. Under settled Supreme Court and Second Circuit precedent, Plaintiffs are entitled to opt out of the class action and bring their claims individually at any time prior to a ruling on class certification.

Thus, the only issue here is whether the 1933 Act claims—which arise from the same offerings of mortgage-backed securities as Plaintiffs' fraud claims in the present action—may be added to this lawsuit or must be asserted by Plaintiffs in a separate case. Efficiency dictates that the claims proceed here. Accordingly, Plaintiffs' motion for leave should be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    The Limited Proceedings in this Action to Date**

As alleged in the Second Amended Complaint, Plaintiffs in this case are two funds that invested more than $43 million in mortgage-backed securities offered by Countrywide between

---

[1] Attached as Exhibit A to the Declaration of David D. Burnett ("Burnett Decl."), filed concurrently herewith, is the Court's order of October 20, 2009. Attached as Exhibit B to the Burnett Decl. is the proposed Third Amended Complaint that Plaintiffs seek leave to file.

1

June and October 2006. Specifically, through two public offerings issued by Countrywide (the "Securitizations"), Plaintiffs purchased CWABS Asset-Backed Certificates, Series 2006-SPS1 and CWABS Asset-Backed Certificates, Series 2006-SPS2. Plaintiffs have since lost their entire investment as a direct result of Countrywide's fraud and other wrongdoing.

Plaintiffs initiated this action against various Countrywide entities, certain former Countrywide officers and directors, and Bank of America ("BofA") on April 23, 2009. The original Complaint stated causes of action for: (1) violations of Section 10(b) of the Exchange Act and Rule 10b-5, fraud, and negligent misrepresentation against the Countrywide defendants; (2) violations of Section 20(a) of the Exchange Act against the individual defendants; and (3) successor liability against BofA.

On June 2, 2009, Plaintiffs amended their Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1). The Amended Complaint contained additional allegations relevant to Plaintiffs' previously asserted claims and also alleged successor liability against two additional BofA entities.

On July 6, 2009, Defendants requested leave to file motions to dismiss the Amended Complaint for failure to state a claim and for failure to plead fraud with particularity. In light of Defendants' requests, on July 14, 2009 the Court offered Plaintiffs leave to amend their complaint "to address the purported deficiencies set forth in defendants' pre-motion letters." Burnett Decl., Ex. C. Accordingly, on August 4, 2009, Plaintiffs filed the SAC containing detailed allegations directed "to address[ing] the purported deficiencies" identified by Defendants.

On September 18, 2009, Defendants filed Motions To Dismiss the Second Amended Complaint. Plaintiffs filed their Opposition to the Motions To Dismiss on October 28, 2009. Defendants' reply, if any, is due December 4, 2009.

It must be obvious, then, that this action remains in its earliest stages. No Defendant has filed an answer. The parties have not conferred pursuant to Federal Rule of Civil Procedure 26(f), and discovery has not yet begun. The Court has neither held a pretrial scheduling conference nor issued a Rule 16(b) scheduling order. The only activity that has occurred is the filing of opening briefs by the Defendants and opposition briefs by the Plaintiffs in connection with Defendants' motion to dismiss the existing claims.

### B.  The Pending Class Action Involving the Same Securitizations

Since November 2007, a class action lawsuit now captioned *Luther v. Countrywide Financial Corp.*, No. BC380698, has been pending in California Superior Court in Los Angeles. *Luther* asserts claims pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 against various Countrywide entities, former officers, and underwriters for misstatements in registration statements governing certain mortgage-backed securities issued by Countrywide. The *Luther* complaint did not assert Rule 10b-5 or fraud claims, but rather only strict liability and negligence claims under the 1933 Act. The putative *Luther* class consists of persons or entities who purchased or otherwise acquired mortgage-backed securities in certain Countrywide offerings.

The original *Luther* class action was filed on November 14, 2007. On June 12, 2008, a related securities class action was filed against Countrywide in California Superior Court in Los Angeles, captioned *Washington State Plumbing & Pipefitting Pension Trust v. Countrywide Financial Corp.*, No. BC392571. Burnett Decl., Ex. D. As with *Luther*, this action alleged only

3

1933 Act claims against Countrywide and other defendants, but included an expanded list of mortgage-backed securities offerings.[2] The two Countrywide securitizations in which Plaintiffs Footbridge and Countrywide invested and that are the subject of this action—the SPS1 and SPS2 Securitizations—were specifically identified in the *Washington State Plumbing* complaint, and the Plaintiffs in this case were included as members of the putative class.

On September 9, 2008, the *Luther* complaint was amended to include the offerings in the *Washington State Plumbing* action, including the Securitizations at issue here. On October 16, 2008, the *Luther* action was consolidated with *Washington State Plumbing* into a single action. Burnett Decl., Ex. E. The consolidated *Luther* complaint asserts 1933 Act claims on behalf of a class of investors that expressly includes the Plaintiffs in this action.[3] Several defendants named in the class action—Countrywide Financial Corp., Countrywide Home Loans, Inc., Countrywide Securities Corp., CWABS, Inc. and David Sambol—are also named in this action. *See id.*

### C. Defendants' Repeated Attempts To Remove Class Action To Federal Court

The defendants in the *Luther* action have made every effort to move the class action to federal, rather than state, court. Defendants initially removed *Luther* to federal court (citing federal jurisdiction under the Class Action Fairness Act) and then appealed to the Ninth Circuit after the district court remanded the case.[4] After the appeal was denied, defendants challenged

---

[2] The concurrent jurisdiction provisions of the Securities Act give investors the option of suing in either federal or state court. *See, e.g., New Jersey Carpenters Vacation Fund v. HarborView Mortgage Loan Trust*, 581 F. Supp. 2d 581, 583 (S.D.N.Y. 2008) ("The Securities Act of 1933 provides concurrent jurisdiction for securities cases arising under the Act meaning that a securities plaintiff may file its case in either State or federal court . . . .").

[3] Notably, all Defendants in the *Footbridge* action are also named defendants in the *Luther* action, except for Countrywide Home Loans Servicing LP, Angelo Mozilo, Bank of America Corporation, and BAC Home Loans Servicing, LP.

[4] *See* Order dismissing the federal declaratory relief action in Case No. CV-09-06162-MRP (JWJx) (Pfaelzer, J., Oct. 9, 2009), attached as Ex. G to Burnett Decl., at 1-3 (summarizing history of

the California state court's jurisdiction under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") and obtained a stay of the California court proceedings. Burnett Decl., Ex. G at 3.

Pursuant to the state court's order, the *Luther* plaintiffs filed an action in district court seeking a declaration regarding whether SLUSA required the class action to proceed in federal court. Burnett Decl., Ex. H. The district court refused to rule on the issue, however, holding that the issue should properly be decided by the state court. Burnett Decl., Ex. G at 6-7 (concluding that a declaratory judgment "will serve no useful purpose" because a state forum is available and "equally competent" to rule on the issue). Consequently, the still-unresolved question of jurisdiction is now once again pending before the California state court. Due to the initial removal, the appeal to the Ninth Circuit, and the filing of the declaratory judgment action, the *Luther* case has spent almost a full year of its existence in federal court.

As the *Luther* Defendants wage their jurisdictional battle—which has already lasted nearly two years—the merits of the claims in *Luther* remain unaddressed. Indeed, to date, no issues related to class certification have been heard by any court, and no notice of the action has been provided to members of the class. Burnett Decl., Ex. F.

### D.   Plaintiffs' Decision To Opt Out of *Luther* and Request for Leave To Amend

After consideration of the recent events and the overall lack of progress in *Luther*, Plaintiffs have decided to opt out of the *Luther* class action and assert the 1933 Act claims alleged therein on their own behalf in a separate action.

---

litigation and noting that the *Luther* action "asserts *solely* federal claims under the Securities Act of 1933") (emphasis added).

There is no doubt that Plaintiffs have the right to opt out of the *Luther* class action at any time prior to class certification.  *See* Part II, *infra*.  The only question here is whether, instead of instituting a new action, Plaintiffs may amend the complaint in this case to include the claims originally asserted in *Washington State Plumbing* and *Luther*.  *See* Part I, *infra*.  Those claims involve the very same Securitizations already at issue here and include the very same defendants that are already parties to this action—Countrywide Home Loans, Inc., Countrywide Financial Corp., Countrywide Securities Corp., CWABS, Inc., and David Sambol (the "Common Defendants").

In pleading their 1933 Act claims, Plaintiffs are adding some additional factual allegations.  Broadly speaking, these facts relate to internal reports and descriptions of Countrywide's business practices, as well as additional facts about the accuracy of Countrywide's disclosures of the loan-level information (*e.g*., owner-occupancy rates, loan-to-value ratios, and other material information).  The additional facts support both the proposed new claims under the 1933 Act and the existing claims.[5]

For the reasons detailed below, Plaintiffs' request for leave to amend their complaint in this case to include the 1933 Act claims alleged against the Common Defendants in *Luther* should be granted.

---

[5] The proposed new claims under the 1933 Act relate to violations of Sections 11, 12(a)(2), and 15.

**ARGUMENT**

I.  **LEAVE TO AMEND SHOULD BE GRANTED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)**

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely granted when justice so requires.[6] This standard has long been characterized as liberal.[7] Indeed, motions for leave to amend made pursuant to Rule 15(a) may be denied only where there is a showing of undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). No such showing can be made here.

As an initial matter, there has been no undue delay. This action was initiated only six months ago, no answers have been filed, and no discovery has been taken. Nor have Plaintiffs exhibited bad faith or dilatory motive in seeking to amend their claims at this early stage of the litigation. Indeed, Plaintiffs have twice indicated their willingness to accommodate Defendants' procedural preferences with respect to briefing any purported issues related to the sufficiency of Plaintiffs' pleadings in light of Plaintiffs' proposed assertion of 1933 Act claims in this case.[8]

---

[6] Contrary to Defendants' assertion in their pre-motion response letter, Plaintiffs' motion for leave to amend is not governed by Federal Rule of Civil Procedure 16(b), which applies only after a Rule 16(b) scheduling order—which, by definition, must "limit the time to join other parties, amend the pleadings, complete discovery, and file motions"—has been entered. No such order has been entered here.

[7] *See, e.g.*, *Slayton v. Am. Express Co.*, 460 F.3d 215, 230 (2d Cir. 2006) ("Leave to replead is to be liberally granted."); *Glusband v. Fittin Cunningham Lauzon, Inc.*, 582 F. Supp. 145, 151-52 (S.D.N.Y. 1984) (describing "the liberal standard for amending pleadings set forth in Fed. R. Civ. P. 15(a) . . .").

[8] Briefing on the sufficiency of Plaintiffs' pleadings is the only aspect of this litigation that would be affected by Plaintiffs' proposed amendment. In that regard, Plaintiffs twice represented that they were willing to keep the current briefing schedule on Defendants' motions to dismiss the Exchange Act and common-law claims, to add the Securities Act claims only after briefing on those motions is complete, and to afford Defendants a later opportunity to move to dismiss the added Exchange Act claims (assuming such an arrangement would be acceptable to the Court). Plaintiffs also stated their willingness, in the alternative, to state their Exchange Act claims now and to request a new briefing schedule for Defendants' motions to dismiss, so that all of Defendants' arguments could be addressed in a single motion. *Id.* Yet another option is to keep the existing briefing schedule, allow Plaintiffs leave to assert

This is not a circumstance in which Plaintiffs have had several "bites at the apple" and have demonstrated that they are unable to cure deficiencies in their pleadings. It is true that this Court did grant Plaintiffs leave to amend once previously to address "purported deficiencies" identified by Defendants with respect to Plaintiffs' Rule 10b-5 and common law claims. Burnett Decl., Ex. C. But the proposed amendment at issue here mostly concerns the proposed new claims under the 1933 Act. Plaintiffs only recently decided to opt out of the *Luther* class action and to assert their claims individually. *See* Part II, *infra*. Plaintiffs should be permitted to assert those claims here.

Finally, Defendants will not be prejudiced by permitting Plaintiffs' 1933 Act claims to be added to this related litigation. Defendants have known about these claims since they were first asserted on Plaintiffs' behalf years ago in *Washington State Plumbing* and *Luther*. No discovery has taken place with respect to either the 1933 Act claims or the claims currently pending in this action, and the issues underlying both sets of claims are logically and transactionally intertwined. The addition of the 1933 Act claims will not significantly delay the proceedings or affect Defendants' conduct in discovery or trial preparation. Indeed, to date, Defendants have not identified any undue prejudice that would result from the granting of Plaintiffs' motion.

Accordingly, pursuant to the liberal standard set forth in Rule 15(a), Plaintiffs should be permitted to amend their complaint in this action to include the 1933 Act claims already asserted on their behalf in *Luther* and some additional factual allegations relevant to the existing claims. As described below, Plaintiffs have an absolute right to assert their 1933 Act claims in an

---

their 1933 Act claims, and then give Defendants an opportunity to submit supplemental briefs addressing the new 1933 Act claims and any additional factual allegations that bear on the existing claims. *Id.* Defendants declined to consent to the amendment. In their subsequent pre-motion letter to the Court, the Countrywide Defendants argued that Plaintiffs' Exchange Act claims would be time-barred. Plaintiffs submitted a reply letter the next day.

8

individual action—efficiency would dictate that Plaintiffs be permitted to assert those claims in this case.

## II.  PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

Having no viable argument that leave to amend should be denied under Federal Rule of Civil Procedure 15(a), Defendants instead insist that Plaintiffs are barred from bringing their 1933 Act claims on statute of limitations grounds. Defendants' position is without merit.

None of the claims that Plaintiffs seek leave to assert here is time-barred. As an initial matter, these are *not* new claims. Plaintiffs' 1933 Act claims have already been timely alleged on Plaintiffs' behalf in the context of the *Luther* class action and have been pending there against the Common Defendants. Plaintiffs are simply seeking to transfer identical claims from the class action to their individual action. Under settled Supreme Court and Second Circuit precedent, they have the absolute right to do this.

### A.  Federal Tolling Law Applies Here

The Supreme Court has held that the same law must govern both a statute of limitations and any tolling principle applied to it. *See, e.g., Board of Regents v. Tomanio*, 446 U.S. 478, 485 (1980) (holding that the same law should govern both a statute of limitations and the tolling principles that go along with it); *cf. Chardon v. Fumero Soto*, 462 U.S. 650, 654 (1983) (applying state law regarding the statute of limitations and tolling "[b]ecause there is no federal statute of limitations applicable"). Thus, because the 1933 Act claims alleged in the *Luther* class action are federal claims governed by a federal statute of limitations (Section 13 of the 1933 Act), federal tolling law applies. *See, e.g., Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) (tolling permitted within federal system in "federal question class actions"); *Friedman v. Wheat First Sec. Inc.*, 64 F. Supp. 2d 338, 344 (S.D.N.Y. 1999) ("After the *Lampf*

9

Court established a uniform federal statute of limitations period for Section 10(b) claims, it follows a fortiori that federal tolling principles govern plaintiffs' Section 10(b) claims in this case.").

> **B.** **The Supreme Court Has Held that "the Commencement of a Class Action Suspends the Applicable Statute of Limitations as to All Asserted Members of the Class"**

In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the Supreme Court considered the tolling of a limitations period in the context of a class member who sought to intervene in a case after class certification was denied. *Id.* at 553. The Court held that the class member should be permitted to intervene, finding that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554.

The Court noted that its holding was consistent with "the proper function of the limitations statute." *Id.* at 555. Specifically, the Court explained the purpose underlying limitations statutes:

> [S]tatutory limitation periods are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. . . . . The policies of ensuring essential fairness to defendants and of barring a plaintiff who has slept on his rights are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.

*Id.* at 554-55 (internal citations and quotation marks omitted).

The Supreme Court has reiterated the broad holding and rationale of *American Pipe* in other contexts. For example, in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), the Court applied *American Pipe* tolling to class members who opted out of a class action after class certification was granted. *Id.* at 176 n.13. The Court stated that its "decision in *American Pipe*

10

. . . established that commencement of a class action tolls the applicable statute of limitations as to all members of the class." *Id.*

Likewise, in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), the Court applied *American Pipe* tolling to class members who filed separate suits after class certification was denied. *Id.* at 348, 351. Here again, the Court reiterated that "[t]he filing of a class action tolls the statute of limitations as to all asserted members of the class." *Id.* at 353 (internal quotation omitted). And, as in *American Pipe*, the Court noted that tolling was appropriate because the purpose of a statute of limitations—"to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights"—is fulfilled once a class action is commenced. *Id.* at 352.

### C. The Second Circuit's Application of *American Pipe*

The Second Circuit has broadly applied *American Pipe* to find that the commencement of a class action tolls the applicable statute of limitation in any circumstance in which a class member later brings an individual action that relates to the events at issue in the class action. Thus, the Second Circuit has tolled the applicable statute of limitations where, for example:

- a class member opts out of a class action alleging Securities Act claims prior to a ruling on class certification in order to bring those claims individually (as Plaintiffs seek to do here), *In re WorldCom Sec. Litig.*, 496 F.3d 245 (2d Cir. 2007); and

- a state court denies class certification in an action alleging state law claims and a class member later seeks to bring different but analogous federal claims in federal court (here, of course, Plaintiffs seek only to bring federal claims *identical* to those already asserted in *Luther*), *Cullen v. Margiotta*, 811 F.2d 698, *overruled on other grounds by Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987).

In *WorldCom*, the Second Circuit held that the "rule of *American Pipe* . . . provides that the filing of a class action tolls the statute of limitations for all members of the asserted class, regardless of whether they file an individual action before resolution of the question whether the

11

purported class will be certified." *WorldCom*, 496 F.3d at 247. The Second Circuit explained that it was proper "to give the benefit of tolling to all those who are asserted to be members of the class for as long as the class action purports to assert their claims . . ." because "[a]s the Supreme Court has repeatedly emphasized, the initiation of a class action puts the defendants on notice of the claims against them." *Id*. at 255.

Of equal, if not greater significance, the Second Circuit in *Cullen* applied *American Pipe* "[n]otwithstanding the differences between the legal theories advanced by plaintiffs in the state court action and those advanced in the [later federal] action." *Cullen*, 811 F.2d at 720. The court explained that:

> The functional purpose of a statute of limitations is to prevent "stale" lawsuits, *i.e.*, suits after evidence has been lost, memories have faded, and witnesses have disappeared. In *American Pipe* and *Crown, Cork*, the Supreme Court held that tolling based on the filing of a prior class action is consistent with these purposes. Consequently, *American Pipe* tolling is properly extended to claims of absent class members that involve the same evidence, memories, and witnesses as were involved in the initial putative class action.

*Id.* (internal quotation and citation omitted). The court further noted that, although there were "differences between the state-law causes of action that were asserted in the putative state class action and the federal causes of action asserted" later, because the "challenged conduct" was "common" to both actions, the "functional goal" of the statutes of limitations had been achieved, and tolling was appropriate.[9] *Id.* at 720, 721.

*Cullen* makes clear that the doctrine of *American Pipe* applies to toll claims of unnamed class members whether the class action is commenced in federal or state court. Indeed, in a case

---

[9] In *Cullen*, where the statutes of limitations at issue were governed by New York law, the court properly looked to New York tolling law. *Cullen*, 811 F.2d at 719 ("[W]hen a federal court looks to state law to determine the most appropriate statute of limitations, it must also, so long as federal policy is not thereby offended, apply the state's rules as to the tolling of the statute."). Once the Court found that "New York courts have . . . long embraced the principles of *American Pipe*," however, the court analyzed those principles without reference to state law, and the Court's analysis would be equally applicable where, as here, federal statutes of limitation are at issue. *Id*. at 719, 720.

on point, a court in this district held that *American Pipe* tolling applied to a subsequent federal action that was based on federal counterclaims asserted in a prior state court class action. *Level I Sportswear, Inc. v. Chaikin*, 662 F. Supp. 535 (S.D.N.Y. 1987). Noting that statutes of limitation "are primarily designed to assure fairness to defendants," the court held that "where the [defendants] have been asserting this claim against [plaintiff] almost continuously since June 1980, *first in state and then in federal court*," the tolling period would be extended for the entire period in which the claim was pursued. *Id.* at 539-540 (emphasis added and internal quotation omitted).

In their pre-motion response letter, Defendants failed to cite either *Cullen* or *Level I*. Instead, they argued that *American Pipe* and *WorldCom* do not apply where a plaintiff in *federal court* is trying to toll a statute of limitations based on the pendency of a class action filed in *state court*. To support this argument, Defendants cited only state-law cases and cases where federal courts apply state law.[10] Those cases are inapposite because in this case, the issue is whether the ***federal*** statute of limitations has been tolled on individual class members' ***federal*** causes of action that are pending in state court.

It merits emphasis that the securities class action in *Worldcom* also involved Section 11 claims under the 1933 Act, and that action was initially brought in state court before being removed by the defendants to federal court. *Worldcom*, 496 F.3d at 248. Nonetheless, the Second Circuit found that the Section 11 claims were tolled as of the date of filing of the *state*

---

[10] Defendants' letter pointed out that some "federal courts *applying state law* have" declined to apply cross-jurisdictional tolling. As Defendants concede, these were diversity cases in which the courts were applying state law tolling, not federal law, and are thus inapplicable to a federal question case. *See Wade v. Danek Med., Inc.*, 182 F.3d 281, 287-88 (4th Cir. 1999) (federal court, sitting in diversity, would apply state law on equitable tolling in determining whether Virginia statute of limitations in products liability action was tolled during pendency of class action in federal court in another jurisdiction); *Clemens*, 534 F.3d at 1025 (federal court, sitting in diversity, applied state law to tolling question on breach of warranty action).

13

court class action. *Id.* at 252 ("We agree with [plaintiffs] that their time to file should have been tolled upon the filing of a class action purporting to assert their claims, regardless of their having also filed individual actions asserting the same claims."). Nothing in the *Worldcom* opinion suggests that the tolling of the class members' claims turned on whether the defendant was successful in removing the *federal* claims to *federal* court.

Here, as discussed, the Common Defendants have spent the past two years vigorously contending that the *Luther* class action belongs in federal court; as a result, *Luther* has spent nearly half of its two-year existence in federal court. After pushing so aggressively for federal jurisdiction, it is the height of hypocrisy for the Common Defendants to contend that the initial decision by Plaintiffs' counsel to file *Luther* in state court rather than federal court should strip absent class members of their entitlement to toll their federal claims.

Accordingly, pursuant to the decisions in *Worldcom*, *Cullen* and *Level I*, the well-established body of federal tolling law on class actions will apply here.

### D.    **The Principles of *American Pipe* Apply Here**

Having described the broad reach of the tolling principles set out in *American Pipe* and its progeny, the statute of limitations issue here can be easily resolved. Indeed, there can be no doubt that the holdings of *American Pipe*, *WorldCom*, and *Cullen* require a finding that the statute of limitations on Plaintiffs' Securities Act claims have been tolled by the *Luther* action. At that time, the Common Defendants were put on notice of the precise nature of the claims that Plaintiffs now wish to assert on their own behalf. As the "functional purpose" of the statute of limitations was thus achieved, Plaintiffs may opt out of the pending class action, and amend their complaint to add the Securities Act to the present action.

14

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Leave to Amend and to File the Third Amended Complaint.

DATED:  New York, New York
October 30, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By: /s/ Daniel L. Brockett
Daniel L. Brockett
David D. Burnett
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000
Fax: (212) 849-7100
danbrockett@quinnemanuel.com
daveburnett@quinnemanuel.com

Marshall M. Searcy III (pro hac vice)
Scott R. Commerson (pro hac vice)
865 S. Figueroa St. 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
marshallsearcy@quinnemanuel.com
scottcommerson@quinnemanuel.com

*Attorneys for Plaintiffs Footbridge Limited Trust and OHP Opportunity Limited Trust*

15