UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------X
                                          :

FOOTBRIDGE LIMITED TRUST and OHP OPPORTUNITY : 
LIMITED TRUST,

                        Plaintiffs,     :     09 CIV 4050 (PKC)

                    v.     :

COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE :
HOME LOANS SERVICING LP, COUNTRYWIDE :
FINANCIAL CORP., COUNTRYWIDE SECURITIES :
CORP., CWABS, INC., CWABS ASSET-BACKED :
CERTIFICATES TRUST 2006-SPS1, CWABS ASSET- :
BACKED CERTIFICATES TRUST 2006-SPS2, ANGELO R. :
MOZILO, DAVID SAMBOL, BANK OF AMERICA CORP., :
and BAC HOME LOANS SERVICING, LP, :

                      Defendants.     :

--------------------------------------------------------------------------X

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND AND TO FILE THE THIRD AMENDED COMPLAINT

# TABLE OF CONTENTS

                                                                          **Page**

TABLE OF AUTHORITIES ........................................................................... ii

BACKGROUND ........................................................................................... 1

ARGUMENT .................................................................................................. 4

I.      THERE IS NO GOOD CAUSE FOR PLAINTIFFS' DISREGARD
        OF THE COURT'S SCHEDULING ORDER ...................................... 4

        A.    Under Rule 16(b), Plaintiffs Must Establish Good Cause ........................... 5

        B.    The Funds Fail To Meet Their Burden Of Establishing
              Good Cause ................................................................................ 5

        C.    Rather Than Meet Their Own Burden, Plaintiffs Assail The
              Court's Order ............................................................................. 6

II.     JUSTICE DOES NOT REQUIRE GRANTING LEAVE TO AMEND ............ 9

        A.    Plaintiffs Improperly Request Additional Leave To Amend in
              Response To Defendants' Joint Motion To Dismiss .................................. 9

        B.    The Funds Have Already Been Given Ample Opportunity To State
              A Claim ...................................................................................... 13

        C.    Plaintiffs' Amendment May Be Rendered Moot By The Court's
              Decision On Defendants' Pending Motion to Dismiss ............................... 15

III.    PLAINTIFFS' SECURITIES ACT CLAIMS ARE TIME-BARRED ............... 15

CONCLUSION ............................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Rules and Statutes</u>

15 U.S.C. § 77m ................................................................................................ 16

15 U.S.C. § 78u-4(b)(3)(B) ............................................................................... 7

Fed. R. Civ. P. 9(b) ........................................................................................... 15

Fed. R. Civ. P. 15 ....................................................................................... <u>passim</u>

Fed. R. Civ. P. 16 ....................................................................................... <u>passim</u>

Fed. R. Civ. P. 23 ......................................................................................... 16-17

### <u>Cases</u>

Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,
483 U.S. 143 (1987) ........................................................................................ 17

Airborne Beepers & Video, Inc. v. AT & T Mobility LLC,
499 F.3d 663 (7th Cir. 2007) ........................................................................... 15

American Pipe & Construction Co. v. Utah,
414 U.S. 538 (1974) .................................................................................. <u>passim</u>

Armstrong v. McAlpin,
699 F.2d 79 (2d Cir. 1983) ............................................................................. 14

Auscape Int'l v. Nat'l Geographic Soc'y,
409 F. Supp. 2d 235 (S.D.N.Y. 2004) ............................................................. 19

Board of Regents v. Tomanio,
446 U.S. 478 (1980) ......................................................................................... 17

Caiafa v. Sea Containers Ltd.,
525 F. Supp. 2d 398 (S.D.N.Y. 2007) ............................................................... 2

Clemens v. DaimlerChrysler Corp.,
534 F.3d 1017 (9th Cir. 2008) ..................................................................... 17, 18

Colorado Capital v. Owens,
227 F.R.D. 181 (E.D.N.Y. 2005) ...................................................................... 5

De Jesus v. Sears, Roebuck & Co.,
87 F.3d 65 (2d Cir. 1996) ................................................................................... 13

De la Fuenta v. DCI Telecomms., Inc.,
206 F.R.D. 369 (S.D.N.Y. 2002) ........................................................................ 15

Dellefave v. Access Temporaries, Inc.,
No. 99 Civ 6098 (RWS), 2001 WL 25745 (S.D.N.Y. Jan. 10, 2001) .................. 11-12

Foman v. Davis,
371 U.S. 178 (1962)............................................................................................ 9

Hall v. United Techs., Corp.,
872 F. Supp. 1094 (D. Conn. 1995).................................................................... 13, 14

Hatfield v. Halifax,
564 F.3d 1177 (9th Cir. 2009) ............................................................................ 17

Hutchinson v. Lausell,
672 F. Supp. 43 (D.P.R. 1987)............................................................................ 12

In re Colonial Ltd. P'ship Litig.,
854 F. Supp. 64 (D. Conn. 1994)........................................................................ 20

In re Eaton Vance Mutual Fund Fee Litig.,
403 F. Supp. 2d 310 (S.D.N.Y. 2005)................................................................. 8-9

In re Merrill Lynch & Co. Research Reports Sec. Litig.,
218 F.R.D. 76 (S.D.N.Y. 2003) .......................................................................... 2

In re Wireless Tel. Servs. Antitrust Litig.,
No. 02 Civ. 2637 (DLC), 2004 WL 2244502 (S.D.N.Y. Oct. 6, 2004)................ 4

In re WorldCom, Inc. Sec. Litig.,
No. 03 Civ. 6225 (DLC), 2004 WL 2889974 (S.D.N.Y. Dec. 15, 2004) ............ 5

In re WorldCom, Inc. Securities Litigation,
496 F.3d 245 (2d Cir. 2007)................................................................................ 17

Kirk v. Heppt,
423 F. Supp. 2d 147 (S.D.N.Y. 2006).................................................................. 15

Leary v. Daeschner,
349 F.3d 888 (6th Cir. 2003) .............................................................................. 4-5

Level I Sportswear, Inc. v. Chaikin,
662 F. Supp. 535 (S.D.N.Y. 1987)....................................................................... 17

Lindner Dividend Fund, Inc. v. Ernst & Young,
880 F. Supp. 49 (D. Mass. 1995) ........................................................ 20-21

Lyddy v. Bridgeport Board of Educ.,
Civ. No. 3:06-CV-1420 (AHN), 2008 WL 5117679 (D. Conn. Dec. 4, 2008) .................... 7-8

Maestas v. Sofamor Danek Group, Inc.,
33 S.W.3d 805 (Tenn. 2000)............................................................. 18

Marlow v. Gold,
No. 89 Civ. 8589 (JSM), 1991 WL 107268 (S.D.N.Y. June 13, 1991)................................ 19

Masters v. Wilhelmina Model Agency, Inc.,
No. 02 Civ. 4911 (HB), 2003 WL 1990262 (S.D.N.Y. Apr. 29, 2003)................................ 14

Matsushita Elec. Indus. Co. v. Epstein,
516 U.S. 367 (1996)...................................................................... 20

McCagg v. Marquis Jet Partners, Inc.,
No. 05 CV 10607 (PAC), 2007 WL 2161786 (S.D.N.Y. Jul. 27, 2007) .............................. 13

Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.,
No. 02 Civ. 1230 (LMM), 2006 WL 2242596 (S.D.N.Y. Aug. 3, 2006) ............................ 8

Parker v. Columbia Pictures Indus.,
204 F.3d 326 (2d Cir. 2000)............................................................... 4, 5

Polar Int'l Brokerage Corp. v. Reeve,
108 F. Supp. 2d 225 (S.D.N.Y. 2000)..................................................... 13

Portwood v. Ford Motor Co.,
183 Ill. 2d 459 (1998) .................................................................... 18

Ravitch v. Price Waterhouse,
793 A.2d 939 (Pa. Super. 2002)........................................................... 18

Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,
30 F.3d 339 (2d Cir. 1994)................................................................ 17

Rombach v. Chang,
355 F.3d 164 (2d Cir. 2004)............................................................... 15

RSM Prod. Corp. v. Fridman,
--- F. Supp. 2d ----, No. 06-cv-11512 (EJW), 2009 WL 424540
(S.D.N.Y. Feb. 19, 2009) ................................................................. 2

Sanders v. Thrall Car Mfr. Co.,
582 F. Supp. 945 (S.D.N.Y. 1983)........................................................ 13-14

Sloane Overseas Fund Ltd. v. Sapiens Int'l Corp.,
941 F. Supp. 1369 (S.D.N.Y. 1996)........................................................................ 18

Smith v. McGinnis,
208 F.3d 13 (2d Cir. 2000).................................................................................... 17

Stern v. Leucadia Nat'l Corp.,
844 F.2d 997 (2d Cir. 1988).................................................................................. 2

Survivor Prods. LLC v. Fox Broad. Co.,
No. 01 Civ. 3234 (LGB), 2001 WL 35829267 (C.D. Cal. June 12, 2001)........................... 2

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
551 U.S. 308 (2007)............................................................................................ 11

Wade v. Danek Med., Inc.,
182 F.3d 281 (4th Cir. 1999) ............................................................................... 18

## Other Authorities

3 James Wm. Moore et al., Moore's Federal Practice § 16.13 (3d ed. 2008)........................ 8

Defendants[1] submit this memorandum of law in opposition to plaintiffs' motion for leave to amend and to file the Third Amended Complaint.

## BACKGROUND

Plaintiffs, hedge funds (the "Funds"), invested in mortgage-backed securities ("MBS") issued by two trusts (the "Trusts"), selecting the riskiest type of MBS available—the underlying loans were second lien mortgages provided to borrowers with blemished credit histories (including prior bankruptcies) originated under reduced documentation programs and exceptions to underwriting guidelines. More than that, to maximize their returns (and risk) the Funds purchased the subordinated tranches of those MBS despite myriad warnings about the risks involved, including (in all capital letters) that the loans underlying the MBS "WILL EXPERIENCE HIGHER RATES OF DELINQUENCY AND LOSS."

The risks they were warned about materialized. So, to avoid the consequences of their own investment decision, the Funds accused the defendants of fraud. Their April 23 initial Complaint was followed on June 1 with an Amended Complaint larded with allegations based on press reports and allegations made in other cases—none of which discussed the MBS the Funds actually bought, or the ample disclosures in the Trusts' offering documents. In accordance with this Court's rules, the defendants filed pre-motion letters highlighting the deficiencies in the Amended Complaint.

At the ensuing July 14 pre-motion conference, in response to the Court's repeated question—whether, in light of the Defendants' pre-motion letters, the Funds considered further amending their pleading—the Funds' counsel insisted that the Amended Complaint was more

---

[1]     The "Defendants" herein consist of Countrywide Home Loans, Inc., Countrywide Home Loans Servicing LP, Countrywide Financial Corp., Countrywide Securities Corp., CWABS, Inc., Angelo R. Mozilo, David Sambol, Bank of America Corp., and BAC Home Loans Servicing, LP.

than sufficient to withstand a motion to dismiss so that no consideration had been given to any further amendment. The Court called a recess and directed counsel to give further consideration to the Court's question. Afterwards, there was an about-face, and leave to amend was requested. Declaration of Mitchell A. Lowenthal, dated November 9, 2009 ("Lowenthal Decl."), ¶ 2. The Court granted that request in a written order that explicitly provided that the "Court will take account that plaintiffs have been granted leave to file a Second Amended Complaint in response to premotion letters in deciding whether to grant further leave to amend." Declaration of David D. Burnett, dated October 30, 2009 ("Burnett Decl."), Ex. C at 2.

The Funds filed their Second Amended Complaint ("SAC") in early August. In response to the Court's comments at the July 14 conference about the—wholly improper[2]—repeated references to press reports in the Amended Complaint, the SAC retains almost verbatim the allegations but just removed from the prior pleading that they come not from any independent investigation but from the press; i.e., the SAC simply does not attribute the allegations to their actual sources. Aside from omitting the popular press as the basis for allegations, in the SAC the Funds relied heavily on allegations made in other cases (that also did not involve the MBS issued by the Trusts here, or the relevant offering documents). That, too, is wholly improper.[3]

---

[2]     See Stern v. Leucadia Nat'l Corp., 844 F.2d 997, 1004 (2d Cir. 1988) ("It is not enough to quote press speculation about defendants' motives and press reports of [alleged wrongdoing by defendants]."); Survivor Prods. LLC v. Fox Broad. Co., No. 01 Civ. 3234 (LGB), 2001 WL 35829267, at *3 (C.D. Cal. June 12, 2001) (striking references to newspaper articles and trade publications in copyright infringement case where quoted articles did not relate to parties and amounted to only a "post-hoc analysis" of the legal claim).

[3]     See RSM Prod. Corp. v. Fridman, --- F. Supp. 2d ----, No. 06-cv-11512 (EJW), 2009 WL 424540, at *12 (S.D.N.Y. Feb. 19, 2009) (striking paragraphs from complaint because "Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial"); Caiafa v. Sea Containers Ltd., 525 F. Supp. 2d 398, 411 (S.D.N.Y. 2007) (allegations from pleadings in unrelated case cannot support securities fraud claim); In re Merrill Lynch & Co. Research Reports Sec. Litig., 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (striking references to SEC and NASD complaints in securities action).

But the cleverness did not stop there.  Almost a month after the Defendants timely filed motions to dismiss, the Funds sought leave to amend yet again—this time to assert Securities Act claims—"justifying" the belated request on their abrupt decision to "opt out" of a prior state court action ("Luther") that had been pending for years.  Plaintiffs wrote to the Defendants requesting that they consent to the amendment (giving them two business days within which to do so) and represented that the sole amendment they would make to the SAC would be to add Securities Act claims against some of the defendants.  Lowenthal Decl., Ex. A.

The Funds were equally explicit with the Court.  Their October 14 pre-motion letter solely sought "leave to file a Third Amended Complaint adding claims under Sections 11, 12(2), and 15 of the Securities Act of 1933."  Lowenthal Decl., Ex. B at 1.  "The proposal here," plaintiffs said, "is simply to transfer the claims from one pending federal action to another."[4]  Id. at 3.  There was no mention in any communication to the Court or to the parties that the Funds intended to add factual allegations to (or delete others from) the SAC.  But that is exactly what they did.  While plaintiffs submitted their proposed Third Amended Complaint ("TAC") to the Court, they did not submit a redline showing the changes.  As the Court will see, Lowenthal Decl., Ex. F, there are textual changes (i.e., beyond changes to the numbering) on 111 of the redline's 138 pages.  The Funds' assertion in their October 14 pre-motion letter to the Court that their request for leave to amend "is not tactical in any respect," Lowenthal Decl., Ex. B at 4, is therefore particularly hard to stomach.

It is well-settled that a plaintiff cannot recover under Section 10(b) and Sections 11 and 12(a)(2) on the same investment.  Thus, the Funds' filing of this action, asserting Section 10(b)

---

[4]    This was a mistaken reference to a by-then dismissed federal declaratory judgment action.  The Luther action seeking damages was and is pending in California state court.  The action in federal court in fact did not assert the claims that plaintiffs seek to add here.  The Luther federal complaint sought a declaratory judgment concerning the scope of the state court's jurisdiction, but asserted no substantive claims.  Burnett Decl., Ex. H at 14.

claims, was inconsistent with their continued participation in <u>Luther</u>, which asserts Securities Act claims. In short, by their filing of this action in April the Funds essentially opted out of <u>Luther</u>. In any event, the contention that they are opting out of <u>Luther</u> now is at best a pretext for circumventing the July 14 conference and the Courts' ensuing Order. The Funds offer no explanation why they never previously mentioned the <u>Luther</u> action—nor why in two pre-motion letters to the Court (violating the Court's rules, the Funds filed a "reply" pre-motion letter) and prior correspondence with the Defendants, they said not one word about adding factual allegations in the TAC, even though there is a pending motion to dismiss.

While sufficient in and of itself, the Funds' gamesmanship is not the only reason to deny leave to amend. First, the Funds' fail to meet their burden of demonstrating the good cause needed to justify further amendment in light of the Court's July 14 Order. Second, the proposed amendment is futile on the merits—each of the Securities Act claims asserted in the TAC simply repeats all the prior allegations (<u>see</u> TAC ¶¶ 322, 333, 341) and therefore sound in fraud. As such, if the Court grants the pending motion to dismiss, the Securities Act claims also fail. Third, the Securities Acts claims are in any event time-barred.

Accordingly, leave to file a fourth complaint should be denied.

## <u>ARGUMENT</u>

## I. THERE IS NO GOOD CAUSE FOR PLAINTIFFS' DISREGARD OF THE COURT'S SCHEDULING ORDER

Two standards govern motions for leave to amend: Rule 15(a) and Rule 16(b) of the Federal Rules of Civil Procedure. <u>See</u> <u>Parker v. Columbia Pictures Indus.</u>, 204 F.3d 326, 339-40 (2d Cir. 2000). Where, as here, a Court has entered a scheduling order limiting the time for a party to amend their pleading, Rule 16(b) applies. <u>In re Wireless Tel. Servs. Antitrust Litig.</u>, No. 02 Civ. 2637 (DLC), 2004 WL 2244502, at *5 (S.D.N.Y. Oct. 6, 2004); <u>see also</u> <u>Leary v.</u>

<u>Daeschner</u>, 349 F.3d 888, 909 (6th Cir. 2003) ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a).").

### A. Under Rule 16(b), Plaintiffs Must Establish Good Cause

Rule 16 "is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point . . . the pleadings will be fixed." <u>Parker</u>, 204 F.3d 326, 340 (2d Cir. 2000) (internal quotations omitted). "Disregarding the instructions of a scheduling order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." <u>In re WorldCom, Inc. Sec. Litig.</u>, No. 03 Civ. 6225 (DLC), 2004 WL 2889974, at *9 (S.D.N.Y. Dec. 15, 2004) (internal quotations omitted). As a result, under Rule 16(b)(4), "a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." <u>Parker</u>, 204 F.3d at 340.

For the purposes of Rule 16(b), "[g]ood cause has been defined to mean that scheduling deadlines cannot be met despite a party's diligence. In other words, to demonstrate 'good cause' a party must show that despite their diligence the time table could not have reasonably been met." <u>Colorado Capital v. Owens</u>, 227 F.R.D. 181, 186 (E.D.N.Y. 2005) (internal citations and quotations omitted). Plaintiffs do not come close to demonstrating good cause here.

### B. The Funds Fail To Meet Their Burden Of Establishing Good Cause

Plaintiffs do not offer any reason for this belated attempt at amendment that can possibly constitute "good cause" for their delay. They concede in their October 14 pre-motion letter to the Court that, in response to the Court's July 14 Order, they "could have asserted their 1933 Act claims as part of the [SAC]." Lowenthal Decl., Ex. B at 4. Yet they offer no explanation why

they did not do so.  Nor do they claim that they were unaware of <u>Luther</u> when they filed the SAC

(if they were unaware, the notion that they have only now decided to "opt out" of <u>Luther</u> would

be even more incredible).

Worse, the explanation plaintiffs offer for their decision to opt out is, at best, implausible.

For years, the Funds were apparently content to let <u>Luther</u> proceed in state court.  And in their

motion papers, the Funds offer no reason for their recent revelation; in their October 14 letter

they identified two.  First, they refer to a "stay of the state court class action."  Lowenthal Decl.,

Ex. B at 4.  But the stay was entered on June 15—two months <u>before</u> the SAC was filed.  Burnett

Decl., Ex. F at 24.  Second, they refer to the filing of the declaratory judgment action in federal

court.  Lowenthal Decl., Ex. B at 4.  But before they filed their motion, the Funds knew (if

nothing else, because defendants so advised them in their October 19 letter to the Court)[5] that the

declaratory judgment action had been dismissed, so <u>Luther</u> was back in state court (which has

scheduled a conference for December 4; Burnett Decl., Ex. F at 21).  In short, <u>Luther</u> remains

where (apparently for years) the Funds were content to have it remain.

Having failed to meet their burden of establishing good cause, the Funds' motion for

leave to amend yet again should be denied.

### C.    Rather Than Meet Their Own Burden, Plaintiffs Assail The Court's Order

In order to avoid this result, plaintiffs argue that the Court's July 14 Order (despite

clearly setting a deadline for plaintiffs to amend) was not a "scheduling order" for purposes of

Rule 16(b).  According to plaintiffs, they should be free to disregard the deadline set by the order

because the Court allegedly failed to follow all of the formalities contained in Rule 16.

---

[5]      Lowenthal Decl., Ex. D at 3-4.

As an initial matter, plaintiffs fail to establish that the Court's scheduling order was in any way deficient under Rule 16. Their arguments are the height of formalism.[6] Plaintiffs could not have missed that the Court issued an order—governing amendments—and set a specific schedule for filing amendments and for motions to challenge that pleading.

Even plaintiffs cannot deny that which the Court issued was an <u>order</u>. As such, even if the Funds' formalism were taken as substance, the "good cause" standard of Rule 16 would still apply. In <u>Lyddy v. Bridgeport Board of Educ.</u>, Civ. No. 3:06-CV-1420 (AHN), 2008 WL 5117679, at *1 n.2 (D. Conn. Dec. 4, 2008), Judge Nevas found that a motion to amend brought after a deadline contained in a standing order on scheduling was subject to Rule 16's good cause standard because the order was controlling until the court issued a formal "scheduling order pursuant to Fed. R. Civ. P. 16(b) adopting the deadlines set forth in the parties' Rule 26(f) planning report." The <u>Lyddy</u> plaintiffs argued that Rule 16 should not apply because the Court's "standing order on scheduling was nothing but a pro forma, generic document that was 'of no effect' and which the court could not have intended to bind the parties[.]" <u>Id.</u> at *1 n.3. Judge Nevas rightly rejected this position as "a naive and ill-informed understanding of court-ordered deadlines which this court has never before encountered" and stated, "[c]ontrary to the plaintiffs' characterization, the scheduling order is a court order that, if disobeyed by an attorney, is explicitly subject to sanctions pursuant to Fed. R. Civ. P. 16(f)(1)(c)." <u>Id.</u> As a result, the court applied Rule 16's good cause standard to reject the plaintiffs' amended complaint.

---

[6]    Plaintiffs assert that a Rule 16(b) scheduling order "by definition, must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Br. at 7. Here, the Court's order set a deadline for Plaintiffs to amend their complaint and established a briefing schedule. These actions necessarily limited the time to join parties, amend the pleadings and file motions. While the July 14 Order does not address discovery, there was no need for it to do so: under the Private Securities Litigation Reform Act, discovery is automatically stayed until a pleading survives a motion to dismiss. <u>See</u> 15 U.S.C. § 78u-4(b)(3)(B).

Here, as in <u>Lyddy</u>, the Court's order contained a specific date by which plaintiffs were to amend their complaint. Nothing more is required for Rule 16(b) to apply. <u>See, e.g.</u>, <u>Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.</u>, No. 02 Civ. 1230 (LMM), 2006 WL 2242596, at *2 (S.D.N.Y. Aug. 3, 2006) (stating "[t]he central issue [in determining if Rule 16 applies] is whether the Scheduling Order . . . contained a deadline for filing amendments"); 3 James Wm. Moore et al., Moore's Federal Practice § 16.13 (3d ed. 2008) ("Once a district court files a pretrial scheduling order, which establishes a time table for amending pleadings, Rule 16's standards control."). Moreover, unlike in <u>Lyddy</u>, the July 14 Order was not a standing order issued in all cases, but one tailored to this case and issued only after a conference and prior submissions to the Court.

Further, the very purpose of the Court's pre-motion individual practices is to prevent defendants and the Court from dealing with repeated motions to dismiss, precisely what the Funds now seek to inflict. Indeed, there is no explanation offered for why 22 pages of additional "facts" have been added to the TAC, including allegations that are irrelevant to Securities Act claims like scienter (<u>see</u> TAC ¶¶ 224, 232, 255-59, 269), unless the Funds have in mind seeking reargument should the Court grant the defendants' pending motion to dismiss. Judge Koeltl's words apply equally here:

> The Court adopted a procedure by which after the plaintiffs filed their Consolidated Amended Complaint, the defendants submitted letters to the plaintiffs outlining alleged defects in the Complaint. The plaintiffs then had the opportunity to cure the defects by filing the SAC. This procedure was intended to prevent the parties from needlessly expending considerable time, effort, and expense in briefing the motion to dismiss and obtaining a decision on that motion, which would then be followed by yet another amended complaint and possibly a new round of motions to dismiss. Absent some good cause, the defendants and the Court were entitled to the plaintiffs' best effort at presenting their claims in response to the objections raised by the defendants. In light of the plaintiffs'

failure to cure the defects after being provided notice, this is not a
case where leave to amend should be given because "justice so
requires."

In re Eaton Vance Mutual Fund Fee Litig., 403 F. Supp. 2d 310, 318-19 (S.D.N.Y. 2005)

(internal citations omitted).  Under this Court's rules, plaintiffs were required to make all tactical

decisions about the facts and theories they wished to assert at the time they filed the SAC.

Plaintiffs have not even attempted to establish good cause for failing to abide by the Court's

scheduling order or for disregarding the Court's individual practices.

## II.    JUSTICE DOES NOT REQUIRE GRANTING LEAVE TO AMEND

Even under Rule 15, Plaintiffs' motion for leave to amend fails.  Rule 15(a)(2) provides

that leave to amend should be given "when justice so requires."  A court may refuse to grant

leave to amend for reasons including "undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment,

etc."  Foman v. Davis, 371 U.S. 178, 182 (1962).  Plaintiffs, who belatedly (and tactically) seek

to add additional factual allegations and causes of action after repeated earlier amendments, have

failed to demonstrate that justice requires the Court to entertain their fourth attempt at pleading a

viable claim.

### A.    Plaintiffs Improperly Request Additional Leave To Amend in Response To Defendants' Joint Motion To Dismiss

Plaintiffs disingenuously portray their request for leave to amend as being the result of a

recent decision to opt out of Luther.  The Luther action, which asserts the same causes of action

plaintiffs now seek to add, was filed nearly two years ago (on November 14, 2007) in Los

Angeles County Superior Court.[7]  Between then and April 2009 (when plaintiffs filed this

action), Luther was removed to federal court and remanded back to state court, lead plaintiffs

and counsel were appointed, a consolidated complaint was filed, and the parties briefed motions

to stay discovery and dismiss the complaint.  On June 15, 2009 (seven weeks before plaintiffs

filed the SAC), the Luther court issued an order staying the state court action and ordering the

plaintiffs to file an action in federal court to resolve a disputed issue related to the court's subject

matter jurisdiction.[8]

        In light of these earlier events, plaintiffs' argument that "recent" developments led to

their decision to opt out of Luther is quite implausible.  As noted, the only post-SAC event

plaintiffs cite in support of this theory is a federal judge's dismissal of a declaratory judgment

action filed in August.  However, plaintiffs are unable to identify any reason why this

development, which simply returned the Luther action to a state court that has promised to

"vigorously proceed with the litigation," Lowenthal Decl., Ex. H, would cause them to opt out

when earlier events (including an open-ended stay of the action) did not.  Indeed, the state court

has already scheduled a hearing for December 4, 2009 to reconsider its stay and to hear

arguments related to the defendants' motion to dismiss.  Burnett Decl., Ex. F at 21.  In light of

this procedural history, the Funds cannot present any plausible, non-tactical argument in support

of their purportedly "recent" decision to "opt out" of Luther.

---

[7]         Luther is a purported class action brought on behalf of all persons or entities who purchased or otherwise
acquired certain mortgage-backed securities, including those at issue in this action.  The defendants in Luther
include Countrywide Home Loans, Inc., Countrywide Financial Corp., Countrywide Securities Corp., CWABS, Inc.,
and David Sambol.  The Trusts had been named defendants in Luther but were voluntarily dismissed from that
action on October 20, 2008.  Countrywide Home Loans Servicing LP, Angelo R. Mozilo, Bank of America Corp.,
and BAC Home Loans Servicing, LP—all defendants here—are not and were never parties to Luther.

[8]         In its order, the Luther court also stated it "will be ready and willing to preside over the action and to
vigorously proceed with the litigation" if it ultimately received the case.  See Lowenthal Decl., Ex. H.

The only "recent event" that appears to explain plaintiffs' decision is the filing of Defendants' motion to dismiss in this action.  Nothing occurred in Luther four weeks after Defendants moved to dismiss here, but that is when the Funds announced their change of heart. Four weeks is plenty of time to appreciate the strength of the Defendants' motion.  Indeed, as the Court will see when it reviews that motion, the Funds ignore wholesale a plethora of arguments—and authorities—cited by the defense.  For example, while the SAC contended that the Offering Documents misrepresented how the underlying loans would be serviced (see SAC ¶¶ 133-35), the Funds have no response to the pleading defects highlighted by Defendants (Defs. Jt. Br. at 19) and ignore the point in their opposition.  Further, while the Funds sued the Trusts, accusing them of fraud, the Funds' opposition simply ignores the Trusts' arguments altogether. And when the Funds do muster responses, they stretch the bounds of advocacy beyond the breaking point, arguing for example that Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007)—which plainly and dramatically raised the pleading standards—actually lowered them, and overruled the legions of cases in this Circuit rejecting as inadequate "fraud by hindsight" allegations.

Especially telling is the scheduling relief the Funds sought in their pre-motion letter. There, they helpfully offered the following:  "it may be more efficient to grant Plaintiffs leave to interpose the new claims in a Third Amended Complaint and then set a revised briefing Schedule[.]"  Lowenthal Decl., Ex. B at 4.  In other words, the object here is shore up a defective pleading and force the Defendants to go through another round of motion practice.  Particularly in light of the plain terms of the July 14 Order, that is no justification for now seeking leave to amend.  See Dellefave v. Access Temporaries, Inc., No. 99 Civ 6098 (RWS), 2001 WL 25745, at *9 (S.D.N.Y. Jan. 10, 2001) ("Leave to amend is not appropriate where, as here, the motion is

11

filed solely in anticipation of an adverse ruling."); Hutchinson v. Lausell, 672 F. Supp. 43, 46 (D.P.R. 1987) (rejecting leave to amend where "the motion for leave to amend could be viewed as an attempt to avoid an adverse ruling on the motion to dismiss").

Despite repeatedly representing to the Court and Defendants that the current motion would seek to add only additional *claims* under the Securities Act, plaintiffs' proposed Third Amended Complaint includes 22 pages of additional *factual allegations*, many of which directly respond to arguments raised by Defendants in their joint motion to dismiss. Plaintiffs compound this by mischaracterizing the new factual allegations as "support[ing] both the proposed new claims under the 1933 Act and the existing claims." Br. at 6. This statement is transparently false, as the proposed amendments include additions to the scienter section of the complaint—an element that is irrelevant under the Securities Act. See Proposed TAC ¶¶ 224, 232, 255-59, 269; see also ¶¶ 10-13, 15, 18-19, 50, 56, 88, 110, 117-122, 129, 161 (all alleging knowing fraudulent conduct).

Even if the Court were to credit plaintiffs' stated reason for the timing of this proposed amendment, plaintiffs do not—and cannot—explain how that would justify their assertion of new claims—and new factual allegations—against defendants who are not named in Luther. See supra note 7.[9] At bottom, plaintiffs are deceptively using their purported "right" to opt out of Luther as a pretext for improperly presenting the Court with facts not included in their previous pleadings. These tactics are the antithesis of good faith.

---

[9]     While Plaintiffs represented to counsel for Angelo Mozilo—one of the defendants not named in Luther—that any proposed amendment would not apply to him, see Lowenthal Decl., Ex. C, they in fact propose to add new allegations expressly against Mozilo and name him in the new claim asserted under Section 15, see Proposed Third Am. Compl. at ¶¶ 50, 224, 232, 269 & Claim Three (Section 15).

**B.      The Funds Have Already Been Given Ample Opportunity To State A Claim**

The Funds have submitted three complaints over the course of this litigation.  In each, they had an opportunity to include the facts and assert the claims they now seek to add.  They chose not to.  It is well established that, even under Rule 15, a court may deny leave to amend "when a party has been given ample prior opportunity to allege a claim."  De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 72 (2d Cir. 1996).  In other words, "[a] district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend the complaint."  Hall v. United Techs., Corp., 872 F. Supp. 1094, 1102 (D. Conn. 1995).

Denial of leave to amend is particularly appropriate here.  The Funds already had an opportunity to amend in response to arguments contained in Defendants' pre-motion letters.  In the July 14 Order, the Court put them on explicit notice of the consequences of either not amending or failing to cure the defects in their pleading by the amendment.  In doing so, the Court went well beyond what was necessary (just as it did when the Funds absolutely insisted on being afforded 85 pages within which to oppose Defendants' motions to dismiss).  The Funds are entitled to nothing more:  the Court "is not required to grant plaintiffs endless opportunity to formulate new theories in response to defendants' arguments[.]"  Polar Int'l Brokerage Corp. v. Reeve, 108 F. Supp. 2d 225, 250 (S.D.N.Y. 2000) (rejecting leave to amend because "a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim") (internal quotations omitted); McCagg v. Marquis Jet Partners, Inc., No. 05 CV 10607 (PAC), 2007 WL 2161786, at *1 (S.D.N.Y. Jul. 27, 2007) ("There is no basis in the Federal Rules or the case law for Plaintiff's right to endless amendments of the complaint until his allegations stumble upon a viable claim.").  In such circumstances, leave to amend can be denied "even

13

where there is no evidence of improper motive or dilatory objectives." Sanders v. Thrall Car

Mfr. Co., 582 F. Supp. 945, 953 (S.D.N.Y. 1983) (rejecting leave to amend while motion to

dismiss was pending because "the liberality with which a court grants leave to amend does not

impart to litigants the privilege of re-shaping their legal theories endlessly"); see also Hall, 872

F. Supp. at 1102 (rejecting leave to amend where plaintiffs sought a second opportunity to

amend after receiving defendant's motion to dismiss).

        Similarly, regardless of bad faith, leave to amend can also be rejected on the ground that

plaintiffs seek a fourth attempt to state a claim.  See Armstrong v. McAlpin, 699 F.2d 79, 93-94

(2d Cir. 1983) ("Because the complaint whose allegations were being considered by the district

court was plaintiff's second amended complaint, the district court did not abuse its discretion in

refusing to give plaintiffs a fourth attempt to plead.").  Put simply, justice does not require

granting plaintiffs four bites at the apple.  See Masters v. Wilhelmina Model Agency, Inc., No.

02 Civ. 4911 (HB), 2003 WL 1990262, at *4 (S.D.N.Y. Apr. 29, 2003) ("[P]leading is not an

interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court

over a rhetorical net until a viable complaint emerges.  Rather, plaintiffs have the responsibility

to plead their case adequately, without defendants' or the Court's assistance.  This they have

failed to do three times.").

        Moreover, here, Defendants have already shouldered the burden and expense of

preparing several motions to dismiss in response to plaintiffs' serialized pleading (one set

challenging the Amended Complaint and now one challenging the SAC).  Plaintiffs' assertion,

Br. at 7 n.8, that they graciously offered Defendants several options with respect to briefing the

TAC is thus disingenuous.  Asking Defendants to once again scrap a motion to dismiss in order

to respond to additional claims and facts (which have been available to plaintiffs all along)

14

hardly qualifies as good faith. Quite the opposite. Courts have viewed tactics like these as establishing prejudice against defendants, and have rejected leave to amend as a result. <u>See</u> <u>Airborne Beepers & Video, Inc. v. AT & T Mobility LLC</u>, 499 F.3d 663, 667 (7th Cir. 2007) (upholding denial of leave to amend where defendant had previously incurred "significant cost" in connection with "brief[ing] three motions to dismiss" because "district court was within its rights to take into account this type of prejudice").

### C.     Plaintiffs' Amendment May Be Rendered Moot By The Court's Decision On Defendants' Pending Motion to Dismiss

Relatedly, the Court need not even address this motion to amend until after it rules on the Defendants' pending motion to dismiss. The Securities Act claims in plaintiffs' proposed TAC repeat and reallege <u>all</u> of the allegations that support their Exchange Act and common law fraud claims. <u>See</u> TAC ¶¶ 322, 333, 341. Therefore, under well-settled Second Circuit law, the proposed Securities Act claims sound in fraud, and are subject to the heightened pleading standards of Rule 9(b). <u>See, e.g.,</u> <u>Rombach v. Chang</u>, 355 F.3d 164, 167 (2d Cir. 2004). As a result, if plaintiffs' current fraud claims fail, then their Securities Act claims would be futile, a well-settled basis for denying leave to amend. <u>See, e.g.,</u> <u>Kirk v. Heppt</u>, 423 F. Supp. 2d 147, 149 (S.D.N.Y. 2006) ("A proposed amendment to a pleading is deemed to be futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis.").

### III.    PLAINTIFFS' SECURITIES ACT CLAIMS ARE TIME-BARRED

Alternatively, leave to amend should also be rejected where, as here, the causes of action plaintiffs seek to add are time-barred. <u>See</u> <u>De la Fuenta v. DCI Telecomms., Inc.</u>, 206 F.R.D. 369, 387 (S.D.N.Y. 2002) (denying leave to amend as futile because claims were barred by the statute of limitations). Claims under the Securities Act must be brought "within one year after

the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence[.]" 15 U.S.C. § 77m. As plaintiffs concede, they were placed on notice of their Securities Act claims by the filing of <u>Luther</u> in November 2007. Because plaintiffs' motion to amend comes nearly two years after this notice, their claims are time-barred.[10]

Plaintiffs argue that their stale claims should be preserved under "federal tolling law." According to plaintiffs, <u>American Pipe & Construction Co. v. Utah</u>, 414 U.S. 538 (1974), and subsequent cases create a broad federal right allowing parties to opt out of any class action filed in any court whenever tactically convenient. Plaintiffs also assert that these cases reward all parties that opt out with a limitations toll for any factually related claim—regardless of whether the class action and individual action are pending in the same court system, whether the actions are based on state or federal law, whether they were filed in federal or state court, and whether an individual plaintiff has already filed a different claim based on the same underlying facts as asserted in the class action. Not so.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, <u>American Pipe</u> tolled the claims of members of a purported class in an action that was originally filed in federal court and asserted federal claims, when that party (after class certification was rejected) subsequently sought to intervene in the federal action to assert the same federal claim. The Supreme Court rationalized that this "interpretation of [] Rule [23]," 414 U.S. at 555, was necessary to prevent the federal courts from being flooded with protective actions filed by all members of a class prior

---

[10]     The Securities Act also provides an absolute repose period of three years from either the date a security was offered to the public (for Section 11) or the date a security was sold (for Section 12(a)(2)), and the statute of repose for a Section 15 claim corresponds to the underlying Section 11 or 12 claim. 15 U.S.C. § 77m. As Plaintiffs' <u>latest</u> alleged purchase occurred on October 3, 2006—more than three years before filing the current motion—Plaintiffs' purchases are also time-barred under the repose period.

to certification, which would "deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure[,]" id. at 553. While the Court further stated that its holding was "in no way inconsistent with the functional operation of a statute of limitations," id. at 554, nowhere did it (or any subsequent Supreme Court case) purport to establish a sweeping rule that would apply throughout every court system in the country to all parties that opt out of class actions.[11]

Plaintiffs ask this Court to apply American Pipe's interpretation of Rule 23 to save their claims. But plaintiffs fail to acknowledge that Rule 23 does not apply in either this case, which is not a class action, or Luther, which is governed not by the Federal Rules but by California's Code of Civil Procedure. As a result, it is unclear under which body of law the Funds believe they are entitled to a toll; they do not say.[12] And it is their burden to demonstrate entitlement to a toll. See Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (burden of proof is on party seeking application of toll).

---

[11]    Plaintiffs misconstrue the holding of Board of Regents v. Tomanio, 446 U.S. 478 (1980), which only states that for federal causes of action that *do not* contain explicit statutes of limitation a federal court should borrow the most analogous state law limitations period together with related ancillary rules (such as tolling). Tomanio did not address the tolling rules that should be applied to a federal cause of action that *does* contain an explicit limitations period (such as the Securities Act), nor did it recognize a general "federal tolling law."

[12]    Instead, the Funds cite two federal cases that reflexively apply American Pipe to class actions filed in state court without considering the basis or rationale for doing so. See, e.g., Level I Sportswear, Inc. v. Chaikin, 662 F. Supp. 535 (S.D.N.Y. 1987). Tellingly, Plaintiffs place even "greater significance" on Cullen v. Margiotta, 811 F.2d 698 (2d Cir. 1987), a case that was decided more than a quarter century ago under New York law, provoked a vigorous dissent for "broaden[ing] American Pipe tolling to a questionable and, I believe, unwise extent[,]" 811 F.2d at 736 (Meskill, J. dissenting), and that Plaintiffs concede is no longer good law. See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 347 (2d Cir. 1994) (recognizing Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987) held statute of limitations from Clayton Antitrust Act should be applied in civil RICO actions rather than state law provisions applied in Cullen). Plaintiffs also latch onto dicta in In re WorldCom Securities Litigation, 496 F.3d 245 (2d Cir. 2007), which held only that class members who opt out of a pending federal class action before class certification could be entitled to American Pipe tolling.

In their pre-motion reply letter, Plaintiffs also argued that they would be entitled to a toll if California law applied. Lowenthal Decl., Ex. E at 4. Plaintiffs, however, abandoned this argument in their brief, and for good reason: the Ninth Circuit has explicitly held that California law would not recognize cross-jurisdictional tolling. See Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1025 (9th Cir. 2008). Similarly, California courts do not extend equitable tolling to non-residents. See Hatfield v. Halifax, 564 F.3d 1177, 1189 (9th Cir. 2009) (equitable tolling in California is available for "claims made by its own residents").

The Funds also conveniently ignore the growing consensus in both state and federal courts (cited in Defendants' pre-motion letter, Lowenthal Decl., Ex. D at 4-5) against the application of cross-jurisdictional tolling.  See, e.g., Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1025 (9th Cir. 2008) (class action filed in Illinois did not toll limitations period under California law because "the weight of authority and California's interest in managing its own judicial system counsel us not to import the doctrine of cross-jurisdictional tolling into California law"); Ravitch v. Price Waterhouse, 793 A.2d 939, 944 (Pa. Super. 2002) (class action filed in different jurisdiction does not toll statute of limitations in another state because alternative rule "may actually increase the burden on that state's court system, because plaintiffs from across the country may elect to file a subsequent suit in that state solely to take advantage of the generous tolling rule").[13]  Plaintiffs are unable to challenge the thoughtful analysis presented by these appellate courts, and therefore dismiss them as inapposite because they involve state law.  But the same analysis that rejects tolling among different state courts is equally applicable when the second action is filed not in another state court, but (as here) in a federal court.

Even if the Court were to give the Funds the benefit of the toll, it would not save their claims.  Luther was filed in November 2007.  Lowenthal Decl., Ex. G.  The filing of an action puts a plaintiff on inquiry notice of a claim.  See Sloane Overseas Fund Ltd. v. Sapiens Int'l Corp., 941 F. Supp. 1369, 1375 (S.D.N.Y. 1996).  But, while Luther asserted claims against hundreds of offerings, seven months passed before another action, Washington State Plumbing

---

[13]    See also Maestas v. Sofamor Danek Group, Inc., 33 S.W.3d 805, 808 (Tenn. 2000) ("Tennessee simply has no interest, except perhaps out of comity, in furthering the efficiency and economy of the class action procedures of another jurisdiction, whether those of the federal courts or those of another state") (internal quotations omitted); Wade v. Danek Med., Inc., 182 F.3d 281, 287-88 (4th Cir. 1999) (Virginia would not adopt cross-jurisdictional tolling because it has no interest in furthering the efficiency of class action procedures in another jurisdiction, and the opposite rule would flood Virginia with forum-shopping plaintiffs and "render the Virginia limitations period effectively dependent on the resolution of claims in other jurisdictions"); Portwood v. Ford Motor Co., 183 Ill. 2d 459, 464 (1998) ("Tolling the statute of limitations for individual actions filed after the dismissal of a class action is sound policy when both actions are brought in the same court system" but not in different court systems).

Pension Trust v. Countrywide Fin. Corp., No BC392571, was filed, in which the offerings in which the Funds purchased MBS were included. Br. at 3-4. Only then, as the Funds conceded in their October 14 pre-motion letter, "were they included as members of the putative class," Lowenthal Decl., Ex. B at 2. And as noted below, only then (if at all) did the Funds first begin to benefit from American Pipe tolling. By then, however, seven of the twelve months of the statute of limitations had already expired; only five months remained.

The Funds filed this action on April 23, 2009. As explained below, that constituted opting out of Luther. But they waited over six months before seeking leave to amend to add Securities Act claims. That was too long. See Auscape Int'l v. Nat'l Geographic Soc'y, 409 F. Supp. 2d 235, 248 (S.D.N.Y. 2004) (once the toll ceases, individual claimants only have whatever time remained when the toll went into effect); Marlow v. Gold, No. 89 Civ. 8589 (JSM), 1991 WL 107268, at *10 (S.D.N.Y. June 13, 1991) (same). Hence, their claims are barred.

Plaintiffs cannot be heard to argue that they are only now opting out of Luther. Br. at 5. Indeed, under Cullen, which plaintiffs view as controlling, American Pipe tolling applies "[n]otwithstanding the differences between the legal theories advanced by plaintiffs in the state court action and those advanced in the [later federal] action." Br. at 12 (citing 811 F.2d at 720). If that is the case, then plaintiffs opted out of Luther in April when they first filed this action, which "involve[s] the same evidence, memories, and witnesses as were involved in the initial putative class action." Id.[14] Moreover, that this action must be deemed an opt out is also

---

[14] It would be absurd for Plaintiffs to argue that Cullen provides independent tolls for their Exchange Act and Securities Act claims. If that were the case, then Plaintiffs could continue to add new claims in the future (under "federal tolling law") so long as Luther was still pending (and for another five months thereafter). Plaintiffs' expansive interpretation of "federal tolling law" thus proves too much, and Plaintiffs can offer no rationale for opportunistically applying it—other than that it rescues their claims.

supported by the principles of issue preclusion, which would prevent plaintiffs from relitigating falsity after a decision is rendered in either action, and by the damages provisions of the federal securities law, which prevent double-recovery for the same alleged fraud under both the Securities Act and the Exchange Act.  See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 383-84 (1996) (citing 15 U.S.C. § 78bb(a)).  If the Funds are considered to have opted out of Luther by filing this action under any theory, then their Securities Act claims are time barred regardless of the application of American Pipe tolling.

Finally, plaintiffs' amendment includes claims not previously asserted against certain Luther defendants in the class action, see, e.g., TAC Claim Three (asserting a new Section 15 claim against David Sambol), as well as claims against defendants not (and in some cases never) named in Luther, see, e.g., Claim One (asserting Section 11 claim against the Trusts), Claim Three (asserting Section 15 claim against the Trusts and Angelo Mozilo).  There can be no argument that any American Pipe tolling would apply to the unnamed defendants.  See, e.g., In re Colonial Ltd. P'ship Litig., 854 F. Supp. 64, 83 n.12 (D. Conn. 1994) (declining to toll statute of limitations against a defendant until such defendant was named in class action); Lindner Dividend Fund, Inc. v. Ernst & Young, 880 F. Supp. 49, 54 (D. Mass. 1995) ("Since defendant Ernst & Young was not named as a defendant in the superseding complaint, the class action tolling doctrine does not apply.") (citing Arneil v. Ramsey, 550 F.2d 774, 782 n.10 (2d Cir. 1977), overruled on other grounds by Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983) and superseded by statute on other grounds).  And the weight of the authority also rejects applying the toll to any new claims against the named defendants, particularly when the claims involve differing legal standards.  In Lindner, the court declined to toll the plaintiffs' claims under Section 18 of the Exchange Act on the basis of a class action that asserted claims under

20

Section 10(b), in part because Section 18 claims (like claims under Section 11 of the Securities Act) do not require proof of intent to defraud and therefore are not the same cause of action as a Section 10(b) claim. <u>Lindner</u>, 880 F. Supp. at 54-55.

In sum, plaintiffs have failed to satisfy their burden of demonstrating that the statute of limitations on their stale Securities Act claims should be tolled during the pendency of a class action filed in state court. Therefore, leave to amend should be denied.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for leave to amend the SAC should be denied under Fed. R. Civ. P. 15 and 16.

Dated: November 9, 2009

O'MELVENY & MYERS LLP

By: _Jonatha Rosenberg / JSt_

   Bradley J. Butwin (bbutwin@omm.com)
   Jonathan Rosenberg
   (jrosenberg@omm.com)
   William Sushon (wsushon@omm.com)
   Times Square Tower
   7 Times Square
   New York, NY 10036
   Tel: (212) 326-2000
   Fax: (212) 326-2061

*Attorneys for Defendants Bank of America Corporation and BAC Home Loans Servicing, LP*

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By: _Mitchell A. Lowenthal_

   Mitchell A. Lowenthal
   (mlowenthal@cgsh.com)
   Meredith Kotler (mkotler@cgsh.com)
   Victor L. Hou (vhou@cgsh.com)
   One Liberty Plaza
   New York, NY 10006
   Tel: (212) 225-2000
   Fax: (212) 225-3999

*Attorneys for Defendants Countrywide Home Loans, Inc., Countrywide Home Loans Servicing LP, Countrywide Financial Corp., Countrywide Securities Corp., and CWABS, Inc*

21

IRELL & MANELLA LLP

By: _____

David Siegel (*pro hac vice*)
(dsiegel@irell.com)
A. Matthew Ashley (*pro hac vice*)
(mashley@irell.com)
Shaunt T. Arevian (*pro hac vice*)
(sarevian@irell.com)
Holly Gershow (*pro hac vice*)
(hgershow@irell.com)
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067
Tel: (310) 277-1010
Fax: (310) 203-7199

*Attorneys for Defendant Angelo Mozilo*

SPEARS & IMES LLP

By: _____

David Spears (dspears@spearsimes.com)
51 Madison Avenue
New York, NY 10010
Tel: (212) 213-6996
Fax: (212) 213-0849

*Attorneys for Defendant Angelo Mozilo*

ORRICK, HERRINGTON & SUTCLIFFE
LLP

By: _____

Lori Lynn Phillips (*pro hac vice*)
(lphillips@orrick.com)
701 5th Avenue, Suite 5700
Seattle, WA 98104-7097
Tel: (206)-839-4300
Fax: (206)-839-4301

Michael D. Torpey (mtorpey@orrick.com)
Penelope A. Graboys
(pgraboysblair@orrick.com)
405 Howard Street
San Francisco, CA 94105-2669
Tel: (415) 773-5700
Fax: (415) 773-5759

*Attorneys for Defendant David Sambol*

22