UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FOOTBRIDGE LIMITED TRUST AND
OHP OPPORTUNITY LIMITED TRUST,

    Plaintiffs,

    v.

COUNTRYWIDE HOME LOANS, INC.,
*et al.,*

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 09 Civ. 4050 (PKC)

ECF CASE

ORAL ARGUMENT REQUESTED

---

**DEFENDANT ANGELO MOZILO'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

Dated: December 4, 2009

                              David Spears
                              Mónica P. Folch
                              Spears & Imes LLP
                              51 Madison Avenue
                              New York, New York 10010
                              (212) 213-6996

                              David Siegel, *pro hac vice*
                              A. Matthew Ashley, *pro hac vice*
                              Shaunt T. Arevian, *pro hac vice*
                              Holly Gershow, *pro hac vice*
                              Irell & Manella LLP
                              1800 Avenue of the Stars, Suite 900
                              Los Angeles, CA 90067
                              (310) 277-1010

                              Attorneys for Defendant Angelo Mozilo

## I. Introduction

Despite the Opposition's length and repetition, it does not dispute the fundamental and controlling facts that Mr. Mozilo had no involvement in the MBS offerings and made no statements at all regarding the "credit-blemished" securities Hedge Funds purchased. This concession alone warrants dismissal, and none of Mr. Mozilo's irrelevant alleged statements about Countrywide in general can change the result.

## II. The Group Pleading Doctrine Has No Application To Mr. Mozilo

Hedge Funds offer no facts to show that Mr. Mozilo had any involvement in the MBS offerings, made any statements to Hedge Funds, or made any statements at all about the credit-blemished securities Hedge Funds purchased. Nor do Hedge Funds allege that Mr. Mozilo signed or authored the Offering Documents or held any position at the securitization subsidiaries that conducted the offerings.

Unable to dispute Mr. Mozilo's total lack of involvement in the MBS offerings – the only relevant consideration – Hedge Funds turn to the group pleading doctrine. Opp. at 48-51. However, even assuming *arguendo* that the group pleading doctrine survived the PSLRA,[1] it cannot apply to Mr. Mozilo here because he is not alleged to have had any role in the Countrywide securitization subsidiaries that conducted the offerings. *See* Opp. at 53 (alleging only that Mr. Mozilo was the CEO of parent Countrywide Financial). The group pleading doctrine does not extend liability for a securitization subsidiary's actions to defendants involved only with the parent company. *See, e.g., Yung v. Lee*, 160 Fed. Appx. 37, 42 (2d Cir. 2005) (allegation that defendant parent "owns and controls [subsidiaries] ... is insufficient to plead [defendant's] participation in the securities offer at issue, even under the group pleading doctrine"); *see also Polar Int'l v. Reeve*, 108 F. Supp. 2d 225, 237 (S.D.N.Y. 2000) ("[T]he group pleading doctrine is extremely limited in scope. Courts in the Second Circuit and elsewhere have

---

[1] The viability of the group pleading doctrine post-PSLRA is in substantial doubt. *See* Sambol Mem. at 4 n.4; and Sambol Reply at 1 n.2.

construed the doctrine as applying only to clearly cognizable corporate insiders <u>with active daily roles in the relevant companies or transactions.</u>") (emphasis added).

## III. Mr. Mozilo's General Statements About Countrywide Are Irrelevant

Hedge Funds' allegations of statements by Mr. Mozilo outside the Offering Documents also fail as a matter of law.

First, Hedge Funds do not dispute that many of the alleged statements are about pay option adjustable rate mortgages, not the "credit-blemished, closed end, fixed-rate loans" at issue in this case. Defendant Angelo Mozilo's Supplemental Memorandum In Support Of Defendants' Joint Motion To Dismiss ("Mem.") at 5-6; Opp. at 51. Nor do Hedge Funds dispute that certain of the alleged statements were made <u>after</u> Hedge Funds' purchases, and thus as a matter of law could not have induced their investment.[2] Mem. at 6. Finally, Hedge Funds do not address the controlling Second Circuit puffery authority cited by Mr. Mozilo, which dealt with alleged misrepresentations that were almost identical to the misrepresentations alleged by Hedge Funds. Mem. at 6-7. Instead, Hedge Funds cite to the Central District of California's decision in *In re Countrywide Financial Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) (Pfaelzer, J.).[3] Opp. at 52-53. That case is inapposite, because it was brought on behalf of <u>shareholders</u> of Countrywide and therefore related to Countrywide's general operating procedures. By contrast, Hedge Funds bought MBS backed by "credit-blemished" subprime loans, so their claims are limited to the offering and sale of that small subset of MBS. Indeed, in another case against

---

[2] Hedge Funds also concede that four of Mr. Mozilo's alleged statements were made between one and two and a half years prior to their purchases, but contend that these outdated statements are still actionable because Mr. Mozilo's Memorandum of Law "arbitrarily selects mid-2005 as a cut-off date" for reliance. Opp. at 52. There was no "arbitrary selection" of a cutoff; Mr. Mozilo cited this district's established precedent. Mem. at 6 (citing *In re Time Warner Inc. Sec. Litig.*, 794 F. Supp. 1252, 1260 (S.D.N.Y. 1992) (holding 10 month old statement "cannot have formed a basis for plaintiffs' expectations when they purchased shares ten or more months later")).

[3] Hedge Funds also cite *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000), which dealt with representations about a company's inventory that do not even remotely track any of the alleged misrepresentations in this case. *See* Opp. at 53.

Countrywide also decided by Judge Pfaelzer, the Court held that general statements about Countrywide's underwriting practices were not actionable in the context of a MBS securitization of <u>solely subprime</u> loans. *United Guaranty Mortgage Indem. v. Countrywide Fin. Corp.*, 2009 WL 3199844, at *17-18 (C.D. Cal. 2009) (Pfaelzer, J.) (granting motion to dismiss and noting that "the extolling's particulars go to Countrywide's general operating procedures – not to the class of loans ('subprime') in issue. . . . The oral representation concerns Countrywide's general operations, not its underwriting standards for the loans (or types of loans) to be insured.").[4]

Because this case turns on the disclosures in the Offering Documents about the credit-blemished subprime MBS issued by the Trusts, Mr. Mozilo's alleged statements outside the Offering Documents and unrelated to the MBS are simply irrelevant. *Olkey v. Hyperion 1999 Term Trust*, 98 F.3d 2, 9 (2d Cir. 1996). Hedge Funds attempt to distance themselves from *Olkey*, but fail miserably. They argue that Mr. Mozilo's alleged statements "gave them comfort that the certificates were sound investments because Countrywide <u>rigorously followed the underwriting standards</u>." Opp. at 51-52 (emphasis added). Hedge Funds then argue that these alleged statements about "rigorous underwriting" did not contradict the Offering Documents but merely "supplemented" them. *Id.* Hardly. Far from claiming "rigorous" underwriting, the Offering Documents expressly warned that the underwriting of the credit blemished loans was "<u>more flexible</u> than the standards generally used" and further stated that "<u>a significant number of the mortgage loans will have been originated based on underwriting exceptions</u>." *See* SPS1 PS at S-14; SPS2 PS at S-14 (emphasis added). "Flexible" and subject to numerous "exceptions" is the antithesis of "rigorous." Thus, *Olkey* is dispositive. *Olkey*, 98 F.3d at 9 ("Since the plaintiffs' claims are contradicted by the disclosure of risk made on the face of each prospectus, no set of additional facts could prove the plaintiffs' claims.").

---

[4] Judge Pfaelzer also rejected the plaintiff's attempt to allege misstatements made after the transactions at issue – something Hedge Funds do in this case. *Id.* at *18.

## IV. Hedge Funds Have Not Alleged The Requisite Strong Inference of Scienter

In support of their scienter allegations, Hedge Funds argue that because Mr. Mozilo served as CEO of parent Countrywide Financial, he was somehow "plainly involved in the offerings" conducted by Countrywide's many securitization subsidiaries. Opp. at 53. However, Hedge Funds' bald conclusion is refuted by their inability to offer any particularized factual allegation as to what that supposed involvement was. Mr. Mozilo held no position at the securitization subsidiaries, had no role in drafting the Offering Documents, and had no role in selling the MBS to Hedge Funds. Because Mr. Mozilo was not involved in the alleged misstatements, he by definition could not have intended to mislead through them.[5]

Hedge Funds' repeated citation to Mr. Mozilo's two e-mails discussing the risks associated with second lien subprime mortgages also fails to establish a strong inference of scienter. Opp. at 54. The risks with respect to second lien subprime loans were explicitly disclosed in the Offering Documents, with the further caution in all capital letters that as a result the loans "WILL EXPERIENCE HIGHER RATES OF DELINQUENCY AND LOSS." Mem. at 9; Joint Motion at 4-5; *see Kramer v. Time Warner, Inc.*, 937 F.2d 767, 778 (2d Cir. 1991) (where there are thorough disclosures, "there is no hint of any intent to deceive"); *cf. Tuchman v. DSC Commns. Corp.*, 14 F.3d 1061, 1069 (5th Cir. 1994) ("Defendants were under no duty to 'employ the adjectorial characterization' that the plaintiffs [prefer].") (citation omitted).

Finally, with respect to Mr. Mozilo's stock sales, Hedge Funds offer no counter to Mr. Mozilo's citation to binding precedent requiring proof that trading was unusual (*i.e.*, dramatically out of line with prior trading) in order to establish scienter. Mem. at 10; *Acito v. Imcera Group*, 47 F.3d 47, 54 (2d Cir. 1995); *In re Gildan Activewear, Inc. Sec. Lit.*, 2009 WL

---

[5] Hedge Funds' misleadingly cite to *In re Countrywide Financial Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044 (C.D. Cal. 2008), a derivative case brought on behalf of Countrywide Financial, for the proposition that a court has determined Mr. Mozilo was "involved in the day-to-day operation of the company." Opp. at 54. Hedge Funds neglect to inform the Court that this decision only considered Mr. Mozilo's involvement in parent Countrywide Financial, not the securitization subsidiaries which conducted the MBS offerings at issue in this case. *See In re Countrywide Deriv. Litig.*, 554 F. Supp. 2d at 1066.

1919618, at *6 (S.D.N.Y. July 01, 2009) (insider trading is unusual only when "dramatically out of line with prior trading practices and at times calculated to maximize personal benefit from undisclosed inside information"). Hedge Funds make no "unusual" showing, because they cannot. Opp. at 54-55. They do not dispute that Mr. Mozilo sold more shares in the year and a half prior to the offerings (approximately 5.75 million shares) than Hedge Funds allege he sold at any time after the securitizations.[6] Mem. at 10.

## V. Hedge Funds Fail To State A Control Person Claim Against Mr. Mozilo[7]

Hedge Funds contend that they are not required to plead culpable participation. In fact, Your Honor expressly held just this year that culpable participation must be pled to state a § 20(a) claim. *See City of Sterling Heights v. Vodafone Group Pub. Ltd. Co.*, 2009 WL 1456846, at *10 (S.D.N.Y. May 20, 2009). Because Mr. Mozilo did not participate in the offerings at all, he by definition could not have been a "culpable participant" in them.

Dated: New York, New York
       December 4, 2009

                                        Respectfully submitted,

                                        SPEARS & IMES LLP

                                        By: /s/ David Spears
                                        David Spears (dspears@spearsimes.com)
                                        Mónica P. Folch (mfolch@spearsimes.com)
                                        51 Madison Avenue
                                        New York, New York
                                        Tel:  212-213-6996
                                        Fax:  212-213-0849

---

[6] As set forth in the Joint Brief and Joint Reply, Hedge Funds' inability to allege a Section 10(b) claim also warrants dismissal of their common law fraud claim. The Opposition argues to the contrary, but offers no legal authority. Opp. at 47.

[7] If this Court grants the Joint Motion, there will be no primary violation and hence there can be no Section 20(a) liability. Mem. at 12.

and

David Siegel, *pro hac vice*
dsiegel@irell.com
A. Matthew Ashley, *pro hac vice*
mashley@irell.com
Shaunt T. Arevian *pro hac vice*
sarevian@irell.com
Holly Gershow, *pro hac vice*
hgershow@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel:   310-277-1010
Fax:   310-203-7199

Attorneys for Defendant Angelo Mozilo