UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
 :
FOOTBRIDGE LIMITED TRUST and OHP OPPORTUNITY :
LIMITED TRUST, :
 :
                Plaintiffs, : 09 CIV 4050 (PKC)
 :
                v. :
 :
COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE :
HOME LOANS SERVICING LP, COUNTRYWIDE :
FINANCIAL CORP., COUNTRYWIDE SECURITIES CORP., :
CWABS, INC., CWABS ASSET-BACKED CERTIFICATES :
TRUST 2006-SPS1, CWABS ASSET-BACKED :
CERTIFICATES TRUST 2006-SPS2, ANGELO R. MOZILO, :
DAVID SAMBOL, BANK OF AMERICA CORP., and BAC :
HOME LOANS SERVICING, LP, :
 :
                Defendants. :
 :
 :
------------------------------------------------------------------------ X

**BofA'S SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF ITS
MOTION TO DISMISS THE SAC**

O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
(212) 326-2000
(212) 326-2061

*Attorneys for Defendants Bank of America
Corporation and BAC Home Loans
Servicing, LP*

December 4, 2009

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    FOOTBRIDGE'S CONCESSION THAT COUNTRYWIDE WAS ACQUIRED IN A REVERSE TRIANGULAR MERGER DEFEATS THE SAC'S CLAIMS AGAINST BofA ............................................................ 2

    II.    BofA'S PUBLIC STATEMENTS PROVIDE NO BASIS FOR AN ASSUMPTION OF COUNTRYWIDE'S LIABILITIES ..................................... 3

    III.    THE SAC DOES NOT ALLEGE THE ESSENTIAL ELEMENTS OF A DE FACTO MERGER UNDER DELAWARE LAW .......................................... 4

CONCLUSION ............................................................................................................................... 5

# TABLE OF AUTHORITIES

## *CASES*            Page

*In re Asbestos Litig.*,
   517 A.2d 288 (Del. Super. Ct. 1986) .................................................................... 3

*AT&S Transp., LLC v. Odyssey Logistics & Tech. Corp.*,
   22 A.D.3d 750 (2d Dep't 2005) ............................................................................. 3

*Bouley v. Am. Cyanamid Co.*,
   Civ. A. No. 85-4368-Z, 1987 WL 18738 (D. Mass Oct. 21, 1987) .................... 3, 4

*Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*,
   375 F. Supp. 2d 257 (S.D.N.Y. 2005) .................................................................... 4

*McDermott v. New York Metro LLC*,
   No. 08 Civ. 7524(PKC), 2009 WL 3003204
   (S.D.N.Y. Sept. 16, 2009) ...................................................................................... 5

*Rohn Indus., Inc. v. Platinum Equity LLC*,
   887 A.2d 983 (Del. Super. Ct. 2005) ..................................................................... 4

*Schumacher v. Richards Shear Co.*,
   59 N.Y.2d 239 (1983) ......................................................................................... 3, 4

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ................................................................................................. 1

BofA joins in the Defendants' Reply Memorandum[1] and writes separately to address Footbridge's successor-liability theory for recovery against BofA.

## PRELIMINARY STATEMENT

In its Opposition, Footbridge does not dispute (i) the black-letter law dictate that "a parent corporation . . . is not liable for the acts of its subsidiaries,"[2] and (ii) that Countrywide merged with and into a BofA subsidiary, Red Oak, and continues to exist as a BofA subsidiary. These two concessions alone require that Footbridge's claim against BofA be dismissed.

But Footbridge's concessions do not end there. Footbridge has also abandoned two of the SAC's successor-liability theories, namely, that BofA (i) expressly assumed all of Countrywide's liabilities when it agreed to undertake Countrywide's obligations under the securitizations' pooling and servicing agreements, and (ii) is a "mere continuation" of Countrywide. (SAC ¶¶ 258, 260, 266; Brockett Letter at 2–4.) What remains—the argument that BofA assumed Countrywide's liabilities through two public statements and *de facto* merged with Countrywide (Opp. at 63, 65–66)—is meritless.

As BofA demonstrated in its opening brief, the press statements on which Footbridge relies provide no basis for imputing liability to an acquirer in a reverse triangular merger. And the statements Footbridge touts—that BofA "bought all of . . . [Countrywide's] liabilities" and "looked at every aspect of the deal" including "potential lawsuits"—are consistent with the merger's reverse triangular structure, whereby Countrywide merged into a BofA subsidiary. Any responsible parent company would be justifiably concerned—for reasons unrelated to veil-piercing—about potential large-scale liabilities facing its wholly owned subsidiary.

---

[1] Unless otherwise specified, capitalized terms shall have the meaning ascribed to them in BofA's opening memorandum (cited as "BofA Br."). "Opposition" means Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint, cited as "Opp."

[2] *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).

Footbridge's *de facto* merger argument likewise fails because it is based on the faulty premise that New York law applies. Footbridge incorrectly argues that New York (the forum state) *de facto* merger law applies because it is identical to Delaware (BofA's state of incorporation) law. But unlike New York law, Delaware *de facto* merger law requires that a plaintiff allege a motivation to harm the merged company's creditors or shareholders. Under New York's choice of law principles, that conflict requires that this Court apply the law of the parent company's state of incorporation. Thus, Delaware law governs, and requires Footbridge to plead facts establishing that BofA engineered the Countrywide merger to disadvantage Countrywide's shareholders or creditors. The SAC alleges no such facts, and thus, Footbridge's *de facto* merger theory fails.

At bottom, Footbridge's claim against BofA is no different from the successor liability claim that Judge Pfaelzer dismissed with prejudice in *Argent*. Footbridge unsuccessfully attempts to cabin *Argent* by asserting that the plaintiff there claimed successor liability based solely on a Countrywide indenture. Footbridge's own brief disproves that characterization, however, acknowledging that the *Argent* plaintiff relied on other successor liability theories analogous to those advanced here. (Opp. at 70 n.34.) Thus, Footbridge has identified no legitimate basis for this Court to depart from *Argent* and settled Delaware successor liability law.

## ARGUMENT

### I. FOOTBRIDGE'S CONCESSION THAT COUNTRYWIDE WAS ACQUIRED IN A REVERSE TRIANGULAR MERGER DEFEATS THE SAC'S CLAIMS AGAINST BofA.

The core of Footbridge's successor liability theory is its attempt to portray BofA as an asset purchaser. That core disintegrates, however, because the SAC alleges no asset purchase. (BofA Br. at 6.) Rather, as the SAC acknowledges, the BofA–Countrywide transaction was a reverse triangular merger. (SAC ¶ 259.) Footbridge tries to blur that distinction by

characterizing its successor liability theories as applying to BofA as an "acquiring company." (Opp. at 63.) But its own authority makes clear that the *de facto* merger doctrine and liability-assumption exceptions apply only to "the general rule that a corporation which *acquires the assets* of another is not liable for the torts of its predecessor."[3] And Footbridge cites no case holding an acquiring parent company in a triangular merger liable for the subsidiary's pre-acquisition torts under either theory. Thus, the Opposition's successor liability theories are inapplicable as a matter of law, and the SAC's claims against BofA should be dismissed for this reason alone.

II.     **BofA'S PUBLIC STATEMENTS PROVIDE NO BASIS FOR AN ASSUMPTION OF COUNTRYWIDE'S LIABILITIES.**

Even if the successor liability exceptions could somehow apply to BofA, the SAC's allegations would still be inadequate to invoke those exceptions. As BofA showed in its opening brief, BofA's alleged loose public statements or payment of unrelated Countrywide liabilities cannot give rise to an implied, let alone express, assumption of any alleged Countrywide liability to Footbridge. (BofA Br. at 8–11.) While Footbridge largely ignores BofA's authorities, it attempts to distinguish one case as involving veil piercing. (*See* Opp. Br. 64–65 n.30.) Regardless of what label plaintiff slaps on its vicarious liability claim, the court's holding that loose, generalized statements cannot impose liability on the parent applies with equal force here; both claims seek to avoid corporate-law formalities and impose liability on the parent as the subsidiary's shareholder. Footbridge attempts to distinguish BofA's remaining authorities on

---

[3] *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244 (1983) (emphasis added) (cited in Opp. at 63); *see, e.g., In re Asbestos Litig.*, 517 A.2d 288, 291 (Del. Super. Ct. 1986) ("As a general rule in asset transactions, the transferee is not liable for obligations of the transferor. An exception to the rule exists, however, in the case where there has been an express or implied assumption of liabilities.") (cited in Opp. at 63); *Bouley v. Am. Cyanamid Co.*, Civ. A. No. 85-4368-Z, 1987 WL 18738, at *3 (D. Mass Oct. 21, 1987) (discussing *de facto* merger and assumption of liability as exceptions to rule that asset purchaser is not liable for transferor's liabilities) (cited in Opp. at 63); *AT&S Transp., LLC v. Odyssey Logistics & Tech. Corp.*, 22 A.D.3d 750, 752 (2d Dep't. 2005) (analyzing *de facto* merger as exception to asset purchaser immunity) (cited in Opp. at 66).

their procedural posture. (*Id.*) But the law of those cases fully applies—as a matter of law, payment of unrelated debts is inadequate to impose liability on the parent.

Moreover, the statements Footbridge quotes in its Opposition—that BofA "bought [Countrywide] and all of its assets and liabilities," was "aware of the claims and potential claims against [Countrywide] and . . . factored these into the purchase" and "looked at every aspect of the deal, from [Countrywide's] assets to potential lawsuits"—suggest no intent to assume Countrywide's pre-merger liabilities. (Opp. at 63-64.) These statements are entirely consistent with the transaction's actual structure, in which BofA indirectly acquired Countrywide lock, stock and barrel through a merger with a wholly owned BofA subsidiary, not with BofA directly.

### III. THE SAC DOES NOT ALLEGE THE ESSENTIAL ELEMENTS OF A *DE FACTO* MERGER UNDER DELAWARE LAW.

Footbridge buries the lynchpin of its *de facto* merger argument in a footnote, where it maintains that "there is no conflict between New York and Delaware successor liability law." (Opp. at 63 n. 28.) Footbridge is wrong. While its authorities state in passing that Delaware and New York each recognize four exceptions to the rule against successor liability, none compares New York's and Delaware's respective *de facto* merger elements, let alone holds that they are identical.[4] In fact, they are quite different. As BofA explained in its opening brief, Delaware law requires a plaintiff invoking the *de facto* merger exception to show that the acquirer had some intent to disadvantage shareholders or creditors,[5] while New York law contains no such

---

[4] *See Bouley*, 1987 WL 18738, at *3 ("The general rule . . . is that a company which purchases the assets of another company is not liable for the debts and liabilities of the transferor.") (quotations and citation omitted); *Schumacher*, 59 N.Y.2d at 244-245 (identifying four exceptions under New York law); *Rohn Indus., Inc. v. Platinum Equity LLC*, 887 A.2d 983, 996 (Del. Super. Ct. 2005) (identifying four exceptions under Delaware law), *rev'd*, 911 A.2d 379 (Del. 2006). *Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*, 375 F. Supp. 2d 257, 267 (S.D.N.Y. 2005) compares New York and Korean (not Delaware) law.

[5] BofA Br. at 9–10 (explaining Delaware law recognizes *de facto* merger only where asset sale *both* (i) amounts to merger between buyer and seller; *and* (ii) was engineered to disadvantage shareholders or creditors).

requirement.[6] That crucial difference is dispositive here, because Footbridge makes no effort in either the SAC or its Opposition to allege any intent to disadvantage Countrywide's shareholders or creditors.

Because there is a conflict, New York choice of law principles require Footbridge to plead its claim against BofA under the law of BofA's state of incorporation—Delaware. Thus, Footbridge's New York factors analysis, even if it were correct, is entirely beside the point. Instead, Footbridge's failure to satisfy an essential element of Delaware's *de facto* merger doctrine provides a separate and independent basis for rejecting that theory.

## CONCLUSION

As an acquirer in a reverse triangular merger, BofA became Countrywide's parent company and cannot be held liable for Countrywide's pre-acquisition torts. Even under Footbridge's incorrect portrayal of the merger as an asset purchase, the SAC still fails because it alleges no facts that could give rise to successor liability for BofA. The generalized public statements concerning the merger on which Footbridge relies do not provide a basis to conclude that BofA assumed liability for all Countrywide pre-merger torts, and the SAC contains no allegation that BofA structured the merger to disadvantage Countrywide's creditors or shareholders.

Without a properly pleaded basis for successor liability against BofA, Footbridge's claim against BofA must be dismissed. And because this is Footbridge's third attempt at pleading its claims, the dismissal should be with prejudice.[7]

---

[6] Opp. at 66 (arguing that New York law considers only "continuity of ownership; cessation of ordinary business and dissolution of the acquired corporation as soon as possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and a continuity of management, personnel, physical location, assets, and general business operation").

[7] *McDermott v. New York Metro LLC*, No. 08 Civ. 7524(PKC), 2009 WL 3003204, at *11 (S.D.N.Y. Sept. 16, 2009) (dismissing SAC with prejudice because plaintiffs "had ample opportunity . . . to cure any defect").

Dated: New York, New York
December 4, 2009

Respectfully submitted,

O'MELVENY & MYERS LLP

By: _____
Bradley J. Butwin
Jonathan Rosenberg
William J. Sushon

7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
E-mail: jrosenberg@omm.com

*Attorneys for Defendants Bank of America Corporation and BAC Home Loans Servicing, LP*